7863

STATE v. BETHUNE.

1. INSANITY.—After plea of insanity, when called on to say why a new day should not be set for the execution of a sentence previously pronounced against him, it is not incumbent on the Court to explain the indictment or to ascertain if the defendant understood the nature of the offense of which he had been convicted.

2. IBID.—The issue of insanity, after conviction, may be submitted to a jury of twelve in Court of General Sessions. The act of 1910, 26 Stat., 764, has no application to a case of this kind.

3. IBID.—ISSUE—JURY.—The form of the interrogatory submitted to the jury and of the oath administered to the jurors on the issue of insanity not having been objected to then and not having been shown to be prejudicial, are not considered.

4. IBID.—The plea of insanity is an affirmative defense which must be established by the preponderance of the evidence by the party interposing it.

26—88

5. CHARGE.—Facts not in dispute may be stated by the Judge during the trial as facts in the case.

6. INSANITY.—Whether the defendant knew right from wrong is involved in the plea of insanity.

Before MEMMINGER, J., Clarendon, June, 1910. Affirmed.

Indictment against Willie Bethune for murder. After sentence and appeal, on being called to say why a new day should not be assigned for execution of sentence, he said he was then insane. This issue was submitted to a jury in the Court of General Sessions, and upon their finding that he was sane a new day was set for his execution. He now appeals from the trial of this issue on the following exceptions:

1st. "That his Honor erred in not explaining to the defendant the indictment and the nature of the offense of which defendant had been convicted and ascertaining in the proper manner if the defendant understood the same before compelling him to be arraigned for resentence.

2d. "That his Honor erred in ordering the defendant to submit the question of his then sanity to the jury in attendance upon the regular term of Court of General Sessions for Clarendon county, in that the said jury had been summoned to try criminal cases and civil cases by consent, and that the question of defendant's insanity was improperly submitted to said jury over the protest of his counsel, in that such question was not one of criminal guilt or involving a trial of the facts constituting a criminal offense, nor an action civil in its nature, and should have been referred to a commission in lunacy to pass upon the sanity of defendant and to have reported the conclusion of such commission to the Court.

3d. "That his Honor erred in overruling the motion of defendant's counsel that the question of defendant's sanity or insanity be referred to a board of physicians for determi-

nation, and in ordering that that question be submitted to the jury then in attendance upon the Court of General Sessions; for that is not the proper manner to determine the question of the sanity of one called upon to receive sentence, but such question should have been referred to the judge of the court of probate, an order appointing a commission of three, appointed by the court of probate, and a jury of twenty-four summoned, to try the question of the sanity or insanity of the defendant.

4th. "That his Honor erred in forcing the defendant to submit the question of his sanity to a jury in said Court, in that his counsel moved that the same be referred to a board of examining physicians, it was the duty of his Honor to have referred the said question to the probate judge for determination, in accordance with the terms of the act of the General Assembly entitled 'An act to regulate the practice with reference to the appointment of a committee for persons *non compos mentis*,' approved 26th February. 1910, in that the defendant was denied by the order of his Honor the remedy provided by the terms of the said act.

.  5th. "That his Honor erred in forcing the defendant to submit the question of his then sanity to the said jury, in that there is no provision of law of force in this State authorizing the question of a convicted defendant's sanity to be determined in the manner here employed, and that such manner is and cannot be reasonably calculated to ascertain the truth of sanity or insanity of a defendant. and that his Honor should have had the defendant examined by physicians.

6th. "That his Honor erred in forcing the defendant to trial upon said question in said manner, in that the proper method, other than the method provided for in the act of 1910, is upon an examination by two or more physicians. under the direction of the probate court, such court having exclusive original jurisdiction of matters in lunacy, except

where the defense of *non compos mentis* is made at trial upon the merits of the case.

7th. "That the manner pursued by his Honor. over defendant's counsel's objection, deprived defendant of his life and liberty without due process of law, in that such manner is not reasonably calculated to ascertain with any degree of definiteness the true condition of the mind of a person or to afford a ground for the establishment of such condition with the precision ordinarily required in criminal procedure.

8th. "That his Honor erred in submitting to the jury the following question: 'Whether the mental condition of the defendant is such that he can understand the meaning of punishment, and whether he be now sane and a true verdict given according to the evidence, so help you God, whether he be now insane;' in that the question ordered and permitted to be submitted was 'whether he be now insane.'

9th. "That his Honor erred in submitting the question to the jury, as follows: 'Whether the mental condition of the prisoner at the bar is such that he can understand the meaning of punishment and whether he be now sane, whether he be now insane;' in that he should have submitted to the jury (after having forced the defendant to trial) the following: Whether the defendant, by reason of a disease of the mind, is unable to understand the nature of the indictment upon which he was tried and convicted, his plea thereto and the verdict thereon, when explained to him by the Court, and is unable to comprehend his own condition in reference to such proceeding, and by reason thereof might make known to the Court, or his attorneys in charge of his defense, the facts within his knowledge, if any, which would show that judgment should not be pronounced against him, especially in view of the fact that his counsel had stated that the defendant was precluded from communicating to him facts relating to after-discovered evidence.

10th. "That it appears by the record that his Honor did not submit the same oath to all of the jury, in that it is stated that while the jury was being empaneled that his Honor stated: 'I see that the Supreme Court says the prisoner has a right to plead that he was then insane, and so I have added to the oath according to their statement, whether he be insane. Just swear the others with that additional oath, Mr. Clerk;' thereby depriving the defendant of a verdict or finding by the whole jury under the same oath.

11th. "His Honor erred in ruling that the defendant had to establish his present insanity; in that the defendant having plead by his counsel his then insanity, as permitted by the order of the Supreme Court, it was incumbent upon the State to establish his sanity.

12th. "That his Honor erred in asking the witness, Dr. Butler, the following: 'When we called upon him this morning to hold up his right hand, and he held it up, and told him to put it down, and he put it down, do you think or not that the man could understand that if he would be sentenced to death what it meant;' in that the presiding Judge thereby stated as a matter of fact that the defendant had put up and put down his hand when told to do so, and thereby conveyed to the jury the impression that in the mind of the Court that constituted an inference or fact showing sanity in defendant, calculated to prejudice the minds of the jury against the defendant by calling to their attention an act or acts of the defendant in the course of the trial.

13th. "That his Honor erred in submitting to the jury the following question: 'Is the defendant herein insane and incapable of understanding the meaning of punishment?' In that his Honor added to the question authorized to be determined by the Supreme Court—that Court having permitted the defendant to interpose the question of his then insanity.

14th. "That his Honor having submitted a question to the jury at the beginning of the trial, he erred in enlarging the question in his charge to include a knowledge of right from wrong; in that the defendant was not advised of the fact that he would have to meet any issue other than if he was at that time insane.

15th. "It is submitted that his Honor erred in charging the jury that the defendant must establish his insanity by the preponderance of the evidence, and that the defendant was presumed to be sane; in that it is incumbent upon the State to establish in a proceeding of this kind the sanity of the defendant beyond a reasonable doubt, for that if the defendant be insane he would be unable to establish a fact by any degree of proof, and his Honor erred in so ruling and forcing the defendant to open the case and offer evidence of the insanity of the defendant in advance of any evidence of his sanity.

16th. "His Honor erred in applying the terms of section 2264 to the defendant's case; in that that section relates by its terms to the proof required of a person on trial on the merits of the case being proved to be *non compos mentis*.

17th "That his Honor erred in charging the jury as follows: 'If a man is simply feigning insane or not, that is all entirely for you upon the testimony. You have to take all that into consideration;' in that his Honor thereby conveyed to the jury the idea that the defendant was feigning insanity, and invaded the province of the jury to determine the issue upon the fact, including the demeanor of the defendant, and such statement was in effect stating that the testimony warranted the inference that the defendant was feigning insanity.

18th. "That the verdict of the jury, and the judgment thereon, are unsupported by the testimony, and there is no testimony to support the same."

*Mr. John H. Clifton,* for appellant.

*Solicitor P. H. Stoll,* contra.

April 20, 1911.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  The following statement is set out in the record:

"The defendant was tried for the murder of C. B. Mims before Gage Judge, Clarendon county, June, 1909. Defendant was convicted and from the judgment thereon appealed, which judgment was affirmed on appeal. Upon petition and a showing in proper form, setting forth that since conviction, the defendant had become insane, the Supreme Court stayed the remittitur.  Thereafter, by order of the Court, the stay of the remittitur was revoked, and defendant allowed to plead, when called upon to say, why a new day should not be assigned for execution, that he was then insane.  On June 8th defendant was called for resentence, and by his attorney, Mr. A. A. Manning, plead that he was insane.  The indictment was not explained to the defendant, and he was not asked if he understood the nature of the same, but was put to the bar and the indictment read.  The question as formulated by his Honor, Judge Memminger, being submitted to the jury, they found against him, and thereupon he was resentenced.  From the judgment thereon, defendant served notice of appeal in due time."

The exceptions will be incorporated in the report of the case.  We proceed to consider them.

*First Exception:* After his Honor, the presiding Judge, ruled that the issue raised by the defendant's plea, that he was then insane, should be determined by the jury, it was not incumbent on him to assume that it was necessary to explain the indictment, or to ascertain whether the defendant understood the nature of the offense of which he had been convicted.  All questions as

to the mental capacity of the defendant were for the consideration of the jury.

*Second Exception:* When the case was called, for the purpose of resentencing the defendant, his attorney, without objection, interposed the plea of insanity. As the question presented by this exception was not raised on circuit, it cannot be considered by this Court.

*Third, Fourth, Fifth, Sixth, Seventh and Sixteenth Exceptions:* "At common law a suggestion of insanity, made after verdict and sentence, did not give rise to an absolute right, on the part of a convict, to have such issue tried before the Court and a jury, but addressed itself to the discretion of the Judge. So, if, after a regular conviction and sentence, a suggestion of then existing insanity is made, it is not necessary, in order to constitute due process of law, under the constitutional guaranty, that the question so presented shall be tried by a jury. And a defendant who alleges his insanity, at the time of his arraignment, is not entitled, as a matter of legal right, to have a separate, independent and preliminary trial of that question, by a jury specially empanelled for that purpose. If there is no apparent reason to suppose him insane, but, on the contrary, he appears to be quite capable of pleading to the indictment, there is no necessity for a preliminary trial, because every right to set up insanity, either when the offense was committed, or at the time of the trial, still remains and can be thoroughly tried by the jury, which is to try the indictment." 16 Enc. of Law 622.

"Where, when a person charged with crime is arraigned, or after he has been convicted, but before judgment and sentence, it is suggested, or appears to the Court, that he may be insane, the question of his sanity may be inquired into and determined by the Judge himself, or by aid of a jury summoned and empanelled for the purpose; and, so. in the case of insanity, after judgment and sentence, and before execution thereof." 22 Enc. 1215.

"The method of determining the preliminary question of insanity, where not the subject of statutory regulation, is largely within the discretion of the Court, which may, itself, enter upon the inquiry, or adopt some other mode, without the aid of a jury. The usual and safest course is to have the matter settled by a jury empanelled for the purpose." 10 Enc. of Pl. and Pr. 1220-1.

Section 2264 of the Code of Laws provides: That "any Judge of the Circuit Court is authorized to send to the State Hospital for the Insane, every person charged with the commission of any criminal offense, who shall, upon the trial before him, prove to be *non compos mentis;* and the said Judge is authorized to make all necessary orders to carry into effect this power."

The act entitled "An act to regulate the practice with reference to proceedings for the appointment of a committee for persons *non compos mentis*," approved the 26th of February, 1910, has no application, as it is not necessary to appoint a committee for a person pleading insanity, when charged with a crime.

Whatever doubts may have been entertained as to the power of the Judge to determine the issue raised by the plea of insanity, in a criminal case, there never has been any question as to the right to submit such issue to a jury, in the absence of a statutory enactment to the contrary. And there is no provision in section 2264 of the Code of Laws, nor any other statutory provision in this State, militating against the right of the Judge to submit such question to a jury.

*Eighth, Ninth and Thirteenth Exceptions:* In the first place, objection was not interposed to the form in which the question of insanity was submitted to the jury. But, waiving such objection, it has not been made to appear that it was prejudicial to the appellant.

*Tenth Exception:* It does not appear that objection was made to the form of the oath administered to the jurors, nor that there was prejudicial error.

*Eleventh and Fifteenth Exceptions:* The plea of insanity is an affirmative defense, and must be established by the party interposing it by the preponderance of the evidence. *State* v. *Stark,* 1 Strob. 506; *State* v. *Paulk,* 18 S. C. 514; *State* v. *Bundy,* 24 S. C. 439; 10 Enc. of Pl. & Pr. 1217.

*Twelfth Exception:* This exception cannot be sustained for the reason that the fact was not in dispute that the defendant had put up and put down his hand, when told to do so, nor has it been made to appear that the question was prejudicial to his rights.

*Fourteenth Exception:* The question, whether the defendant had knowledge of right from wrong was necessarily involved in the plea of insanity interposed by him. *State* v. *Bundy,* 24 S. C. 439.

*Seventeenth Exception:* There is not a single word, in the charge set out, in the exception tending to show in what light the presiding Judge viewed the facts.

*Eighteenth Exception:* It is only necessary to refer to the testimony to show that this exception cannot be sustained.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed and that the case be remanded to that Court for the purpose of having another day assigned for the execution of the sentence.