440 So.2d 315 (1983)
Willie Madison MADLOCK
v.
STATE of Mississippi.
No. 53978.
Supreme Court of Mississippi.
November 9, 1983.
Cliff Finch, Stephen L. Henning, Cliff Finch & Associates, Batesville, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
*316 Before WALKER, P.J., and BOWLING and PRATHER, JJ.
BOWLING, Justice, for the Court:
Appellant was indicted and tried in the Circuit Court of the First Judicial District of Panola County for the crime of murder. The jury returned a verdict of manslaughter and the trial judge sentenced appellant to serve a term of nine years in the custody of the Mississippi Department of Corrections.
On appeal appellant alleges a number of assignments of error. There is need only to discuss one of these assignments as it requires a reversal of the case. There is no merit to any of the other assignments.
Appellant, Willie Madison Madlock, was indicted for shooting and killing one Willie Petty. Appellant was at the time of the incident married to Petty's sister and they had three children. Also at the time of Petty's death, appellant and his wife were separated. Petty had as a common-law wife Rosemary Petty. They, too, were separated at the time Petty met his unfortunate death.
The incidents surrounding the night of the occurrence are disputed in some detail, but not to any great extent. As is so familiar in these type of matters, the shooting occurred on Saturday night (or 2 a.m. on Sunday, September 14, 1980). During the middle portion of Saturday night, appellant was in contact with some friends at his home. Appellant testified that on one occasion, Willie Petty, the deceased, and Rosemary Petty came to appellant's home and at that time Petty threatened appellant's life. Appellant testified that later Petty came back to Madlock's residence and rang the doorbell, but he did not answer it. From the evidence, it seems that during all of the separation of the parties, appellant and Rosemary Petty had been seen together on occasions. Appellant testified that around midnight he became concerned about Petty's threats and went to the police department and signed an affidavit alleging that Petty had made threats against his life. We disgress here to point out that the city judge verified this by testifying that around midnight, he was called by the police department dispatcher and he went to the station and found appellant there requesting that something be done because of threats made as shown by the affidavit he had signed. It developed the threats took place outside the city limits and the city judge testified that he therefore would have to wait until the next morning to turn the matter over to a justice of the peace.
After attempting to bring charges against Petty for threats on his life, appellant returned to his home. Between 1 and 2 a.m., a group, including Rosemary Petty, came to his house and this culminated in all going to an all-night service station where food was served to get something to eat. It developed that Willie Petty was near the scene and as appellant stopped his car in front of the place of business, Petty ran his car into the right front fender of appellant's car. Appellant then ran into the service station and requested that the police be called. The participant who appeared to show the most composure, Rosemary Petty, stayed in Madlock's car with the windows raised and the doors locked. When Madlock returned to his car, he was accosted by Petty and according to all of the witnesses, Petty chased Madlock around the car at least three times. The acquaintances of both of them deterred Petty but in some way he broke loose or was released. He again chased appellant around the car. At this point, there appears the biggest inconsistency in the testimony. Appellant testified that because of Petty's threats earlier that night, he felt sure that Petty was armed and that when Petty put his hand in his pocket, appellant fired one shot from a .22 caliber revolver which struck Petty in the abdomen. He later died from this one bullet wound. Some witnesses testified that the shot was fired while both of Petty's hand were visible. (Rosemary wisely remained in the locked car.)
The assignment of error requiring a reversal of the cause is the allegation that the assistant district attorney in his final argument to the jury, made statements prejudicial *317 to appellant and unwarranted statements that require a reversal. For clarity, we quote this portion of the prosecutor's testimony as it appears in the record:
I don't think there's any question. Now, let's get to the threats, these so-called threats. Who, other than this Defendant, has told you that Nipper threatened Madlock? Who? Madlock. Nipper can't talk. He's six feet under. Who was the only other person who was a supposed eye witness to these threats? Guess who. The woman that this thing is all about. Rosemary Petty. Now, where is Rosemary Petty? Don't you know, ladies and gentlemen of the jury, that if Rosemary Petty would come forth and sit on that witness chair and tell you that Nipper had threatened Madlock, Governor Finch would have had her under 15 subpoenas. COUNSEL FOR THE DEFENDANT (Mr. Finch): Now, your Honor, we know that the burden of proof is on him and that it is his responsibility to call witnesses. Your Honor has already instructed that he didn't have to call one witness. And Mr. Williams knows what Rosemary Petty was said all along, and it was his burden of his proof in this case to bring her and everybody else. Not one thing was Willie Madlock, and we object to any argument and inference that it was his responsibility, that is my responsibility to represent him, to bring anybody, including the Defendant.
ASSISTANT DISTRICT ATTORNEY (Mr. Williams): My burden, Your Honor, is to prove the elements of the crime, not to prove threats.
THE COURT: I overrule the objection. I don't think the argument is proper. I think the Court understands the rule on the availability of witnesses and (unintelligible word) to be argued.
ASSISTANT DISTRICT ATTORNEY (Mr. Williams): I don't blame him, I'd squirm too.
COUNSEL FOR THE DEFENDANT (Mr. Finch): Your Honor, we object to that form of argument and note an exception to those forms of arguments.
As we already have seen, the primary person in the scenario, other than appellant and the deceased, was Rosemary Petty. Appellant had testified that she was with Petty when they came to Madlock's house and threatened to kill him. It is undisputed that whether or not this did in fact occur, appellant went to the police station and complained of his life being threatened by Petty and signed an affidavit, as hereinbefore stated. The city judge came at midnight to the police station to assist in what could have been a potentially dangerous situation. He talked with appellant and explained to him why he could not handle the case since, the threats occurred outside the city limits. We may therefore infer that appellant was in a satisfactory physical condition at around midnight when he talked with the police officer and the city judge.
It is clear that the prosecuting attorney's argument regarding the failure of appellant's attorney to offer Rosemary Petty as a witness to confirm the threats of the deceased was error. This erroneous and prejudicial argument resulted in an objection by the appellant's attorney. The trial court overruled the objection. The prosecuting attorney then showed the tone of his entire argument by making the above statement, "I don't blame him, I would squirm too."
This Court in a number of cases has cautioned prosecuting attorneys not to get carried away with their exuberance and commit errors prejudicial to the accused. We hasten to say that the vast majority of prosecuting attorneys adhere to this duty, but unfortunately there still are those who try to go an extra mile. The citizens on the jury naturally look up to their elected officials, particularly those in law enforcement. Vigorous prosecution of criminals is commendable, but this Court is committed to the principle that those accused of crime are tried fairly. There was no excuse whatever for the prosecuting attorney in this case to make the above quoted statements regarding the failure of appellant to place on the witness stand the person who would *318 be presumed to know about the threats made by the deceased. Howell v. State, 411 So.2d 772 (Miss. 1982); Clemons v. State, 320 So.2d 368 (Miss. 1975); and Craft v. State, 271 So.2d 735 (Miss. 1973).
Rosemary Petty was equally accessible to be subpoenaed as a witness by both the state and the appellant. In fact, as she was the deceased's common law wife and bore his name this would tend to make her more accessible to the prosecution. Regardless of this, there is no proof in the record as to her accessibility or inaccessibility. We have held that particularly in criminal cases, the failure to call a witness equally accessible to both the defendant and the state is not a proper subject for comment by either party. Smith v. State, 187 Miss. 96, 192 So. 436 (Miss. 1939); Wells v. State, 162 Miss. 617, 139 So. 859 (1932); and Archer v. State, 140 Miss. 597, 105 So. 747 (1925).
Because of the prejudicial and erroneously vigorous statements of the prosecuting attorney in his final arguments and the lower court's overruling appellant's objection thereto, we are forced to reverse the cause and remand for another trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P. JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.