## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-KA-00186-SCT

*DARRIN C. FOX*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/1997 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/24/2000 |
| MOTION FOR REHEARING FILED: | 3/2/2000; denied 5/4/2000 |
| MANDATE ISSUED: | 5/11/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case is before this Court on appeal from a judgment based on a jury verdict convicting Darrin C. Fox for possession of marijuana with intent to distribute, as an habitual offender. He was sentenced to twenty years (20) in the custody of the Mississippi Department of Corrections. From that conviction and sentence, Fox appeals to this Court assigning the following as error:

**1) Whether the trial court erred by failing to grant defendant's motion for a directed verdict and motion for judgement notwithstanding the verdict and/or the verdict was against the overwhelming weight of the evidence.**

**2) Whether the trial court erred by improperly allowing the introduction of prior bad acts?**

**3) Whether the trial court erred by failing to grant a mistrial after the improper comment by prosecution on the failure of defendant to call a witness?**

### STATEMENT OF FACTS

¶2. A Grand Jury for the First Judicial District of Hinds County, Mississippi, indicted Darrin C. Fox (hereinafter "Fox"), along with co-defendant Felton Martin (hereinafter "Martin"), for the offense of possession of marijuana in an amount greater than one ounce with the intent to distribute, pursuant to Miss. Code Ann. § 41-29-139 (Supp. 1996). The indictment was later amended to charge Fox as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 (Supp. 1996).

¶3. On March 21, 1996, members of the Jackson/Hinds County Drug Enforcement Unit, went to 1069 Deer Park Street in Jackson, Mississippi, with a search warrant for illegal drugs. After knocking and announcing, the officers went through the front door, which was "wide open." Detective Richard Nations estimated it took him about ten seconds to get from the front door to the kitchen. In the kitchen, Officer Nations saw the defendants, Fox and Martin, standing over the marijuana. Fox had a pair of scissors in his hand. On the kitchen island there were two Tupperware containers, one with loose marijuana in it, and the other containing some forty small "Ziplock" bags each filled with marijuana. There was also a small brown bag that contained some ten additional bags filled with marijuana. The officers found a total of more than eight (8) ounces of marijuana.

¶4. The police arrested defendant Darrin Fox ("Fox"), co-defendant Felton Martin ("Martin"), Fox's brother Gregory Fox, Marland Buckley, Shannon Hunter and Demarcus Kelly, all of whom were at the house at the time of the raid. Fox and Martin were the only co-defendants in this trial.

¶5. Although Fox's mother owned the house, there were two pieces of mail addressed to Fox at 1069 Deer Park. Both Fox and Martin had pagers on their persons. Fox had $413 on his person; Martin had $220 on his person. Fox testified that he borrowed the $413 from his mother for a down payment on a car.

¶6. At trial, Gregory Fox testified that his brother, Fox the defendant, would not tolerate marijuana in his mother's house. The prosecution pointed out that Gregory Fox's testimony was misleading to the jury. Outside the presence of the jury, the prosecution told the judge that Fox, while free on bail on the charge here under consideration, was found in the same house with an additional quantity of marijuana, some six months after this charge arose. The circuit court sustained defense counsel's objection about the comments concerning the incident that happened six months later but agreed, over a defense objection, to allow another line of questioning to be asked in the form of a hypothetical. Bobby Delaughter (hereinafter "Delaughter"), assistant district attorney, referred to this subsequent event by asking Gregory Fox if his opinion, i.e., Fox's intolerance for marijuana in his mother house, would change if marijuana was in the house "on another occasion" and Fox knew about it. Defense counsel objected again. Gregory Fox never answered the question. The trial judge instructed the jury that the question was merely a hypothetical question and not intended to convey any new factual information for them to consider in this case. Fox's counsel moved for a mistrial because of the supposed unfairly prejudicial question by Delaughter. The motion was denied.

¶7. Also at trial, Fox called Marland Buckley, Shannon Hunter and Greg Fox. All testified that Demarcus Kelly brought the marijuana into the house. Buckley admitted that he purchased two bags of marijuana from among the bags found by police in the house.

¶8. At the conclusion of the State's case, Fox's counsel moved for a directed verdict based upon his belief that there was insufficient evidence to show that Fox intended to distribute or sell the marijuana.

¶9. During closing arguments, Delaughter argued that the defense's witnesses blamed the crime on

Demarcus Kelly, who was neither there nor searched for by the defendant's investigator. Fox's counsel objected that this was an improper comment about a witness equally available to both sides and moved for a mistrial. The trial judge overruled his objection and denied the motion for a mistrial.

¶10. The jury returned verdicts of guilty for both defendants. Fox was given a twenty (20) year sentence. Following the denial of defendants' motions for JNOV or a new trial, Fox timely appealed his conviction and sentence to this Court.

## ANALYSIS

**1) Whether the trial court erred by failing to grant defendant's motion for a directed verdict and motion for judgement notwithstanding the verdict and/or the verdict was against the overwhelming weight of the evidence.**

¶11. When reviewing the sufficiency of the evidence, this Court looks to all of the evidence before the jurors to determine whether a reasonable, hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. *Jackson v. State*, 614 So. 2d 965, 972 (Miss. 1993). This Court will not reverse a trial judge's denial of a motion for a new trial unless the verdict is so contrary to the weight of the evidence that, allowing it to stand would sanction an unconscionable injustice. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983).

¶12. Fox filed a Motion for JNOV requesting that the judge consider as part of the motion the fact that the State did not prove the necessary elements for possession of marijuana with intent to distribute. Fox argues that the verdict of the jury is contrary to law, against the overwhelming weight of the substantive evidence produced at the trial and manifestly wrong as a matter of law. In essence, Fox argues that the State did not successfully prove either "possession" or "intent to distribute."

¶13. In appeals from the denial of a motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. *Tait v. State*, 669 So. 2d 85, 88 (Miss. 1996); *Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994); *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *Glass v. State*, 278 So. 2d 384, 386 (Miss. 1973).

¶14. On "possession," Fox argues that the evidence in this case does not support a finding of constructive possession of the drugs. The constructive possession rule was set forth in *Curry v. State*, 249 So. 2d 414 (Miss. 1971). There, this Court stated:

> What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual or physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Hamm v. State*, 735 So. 2d 1025, 1028 (Miss. 1999) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). Fox asserts that he was not the only person who had control over his mother's house. Fox contends that the best evidence linking him with the drugs was that he was holding a pair of scissors in his

hand "standing behind a food bar with freshly cut marijuana in plastic bags in the middle of the kitchen." Fox urges that the State's strongest evidence, taken in the light most favorable to the State, does not show his constructive possession of the marijuana.

¶15. The State asserts that the fact that Fox had a pair of scissors in his hand while standing near containers with freshly cut marijuana in a house owned by his mother and with no one else in the house shown to have had a substantial connection to it or control of it, shows Fox had constructive possession.

¶16. We agree with the State. There was sufficient evidence for constructive possession. Also, the verdict was not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State,* 691 So. 2d 948, 957 (Miss. 1997); *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987).

¶17. On "intent to distribute," Fox argues that there was not enough evidence to show that there was an intent to distribute. Here, Fox says that over eight ounces of marijuana is not enough to show possession with intent to distribute. Fox cites to *Girley v. State*, 602 So. 2d 844 (Miss. 1992) for support. Fox, citing no authority, also insists that possessing a pager alone is not evidence of intent to distribute drugs. Similarly, Fox argues that the $413 on his person at the time of the arrest was insufficient to show that he intended to distribute drugs. Again citing to *Girley*, Fox argues that this Court has held that $861.69 along with even more marijuana (11½ ounces) was not enough to support a possession of marijuana with intent to distribute conviction. Finally, Fox contends that forty small Ziploc bags containing marijuana could be used only for personal consumption.

¶18. This Court in *Girley* held that possession of 11 ½ ounces of marijuana contained in four sandwich bags along with $861.69 was insufficient evidence to sustain Girley's conviction for possession with intent to sell. *Girley v. State*, 602 So. 2d at 845. There, Girley was found with one plastic bag of cocaine and four full size sandwich bags that contained marijuana. *Id*. at 844. Here, the defendant was found with forty small ziplock bags of freshly cut marijuana, with scissors in hand, with a pager, and $413 on his person, while unemployed. These facts alone do not establish an intent to distribute marijuana. However, the surrounding circumstances, including the testimony by a witness that purchased marijuana from among the bags found in the house, are sufficient evidence for a jury to conclude that there was an intent to distribute.

¶19. There is no magic number as to quantity with respect to evidence of intent to distribute. This Court has upheld a conviction where there was less than eight ounces of marijuana. *Alexander v. State*, 503 So. 2d 235 (Miss. 1987) (Although defendant made no claim of insufficiency of evidence, the evidence before the jury was such that Court concluded that the defendant was indeed in possession of more than an ounce of marijuana with intent to sell; defendant was found with thirty-nine sealed envelopes of marijuana consisting of aggregate of 1.722 ounces, and $500 in cash on his person). When the quantity is such that an individual could use it alone, then that quantity is not in and of itself sufficient to create an inference of intent. Where the amount is greater than what one might ordinarily have for personal consumption, it does create an inference of intent to distribute. In either case, this Court must view the surrounding circumstances in determining the sufficiency of the evidence of intent. *Taylor v. State*, 656 So. 2d 104, 108 (Miss. 1995); *Stringfield v. State*, 588 So. 2d 438, 441 (Miss. 1991). Here the quantity, the packaging, and the fact that there was testimony from a person who bought two bags from the marijuana in the house was sufficient evidence to allow a fair-minded jury to find an intent to distribute.

¶20. Fox, argues that "the verdict was so contrary to the overwhelming weight of the evidence that to allow

it to stand would be unconscionable " citing to *Taylor v. State,* 656 So. 2d 104, 107-108 (Miss. 1995). It was not.

## 2) Whether the trial court erred by improperly allowing the introduction of prior bad acts?

¶21. Fox argues that the mere mention of other bad acts was inadmissable character evidence, used unfairly to prejudice the jury against Fox. Fox argues that the State improperly presented evidence of a subsequent arrest that occurred on September 10, 1996. During cross examination of Gregory Fox, appellant's brother, the trial judge allowed the prosecution to test the bias of the witness through the fact that he is Fox's brother. The trial court said that Delaughter could ask the witness hypothetically if there had been any marijuana found anytime in the house before or after the incident and if that would change his mind about whether his brother would have tolerated marijuana in his mother's home. The State proceeded as follows:

> Q. (Mr. DeLaughter) Now, I believe one of the earlier questions I asked you is it's your testimony that in your opinion that your brother, Darrin Fox, would not have allowed or permitted or tolerated marijuana in your mother's house at 1069 Deer Park Street; is that correct?
>
> A. (Gregory Fox) Yes.
>
> Q. That it's your opinion he would not tolerate that?
>
> A. Yes.
>
> Q. Okay. And he is your brother; is that correct?
>
> A. Yes.
>
> Q. And your opinion in that respect wouldn't change even if you knew there was marijuana found in that house on other occasions and he knew about it?

Fox objected, stating that the prosecution had introduced the information regarding the marijuana in such a fashion that the jurors would believe that the marijuana was indeed found in the house on another occasion and that Fox knew about it.

¶22. Miss. R. Evid. 404(a) provides that generally, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose that he acted in conformity therewith on a particular occasion. . . ." The prosecution claimed that the testimony falls within an exception to the rule pursuant to Rule 404(b) wherein "[e]vidence of other crimes is . . . admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Generally, evidence of a crime other than that charged in the indictment is not admissible evidence against the accused. *Duplantis v. State*, 644 So. 2d 1235, 1246 (Miss. 1994); *Ladner v. State*, 584 So. 2d 743, 758 (Miss. 1991); *Mackbee v. State*, 575 So. 2d 16, 23-29 (Miss. 1990).

¶23. The State argues that the objection made by Fox's counsel was to references of any "prior convictions." Here the question was not about a "conviction" but a prior bad act. The State argues that subsequent to that objection, Fox's counsel joined in an objection as to "the form of the question" originally made by Klotz, Martin's attorney. The State argues that Fox waived this objection now raised before this Court. The State cites to *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1995)(objection on one or

more specific grounds is a waiver of all other grounds), overruled on other grounds, *Weatherspoon v. State*, 732 So.2d 158 (Miss. 1999). The State also argues that although Delaughter asked a follow-up question, Gregory Fox never actually answered it before the jury. Nevertheless, here both defendants in the trial objected when Delaughter asked the question about the drugs being in the house once. Accordingly, the objection is not being expanded or raised for the first time on review by this Court. The question was not waived. However, the question was permissible because Gregory Fox "opened up" the door.

¶24. The prosecution pointed out in its proffer that the Gregory Fox "opened up" the subject with the testimony of Fox's intolerance for drugs in his mother's house. Gregory Fox testified that his brother would not stand for drugs in his mother's house. The State argues that the question was responsive to that issue. After the question by Delaughter, the court issued a limiting instruction to the jury. The limiting instruction issued to the jury by the court is as follows:

> Court: Ladies and gentlemen, shortly before we had the recess a moment ago there was a question asked by Delaughter of this witness and an answer given by the witness. The Court instructs you that that question was merely a hypothetical question. It was not a question stating anything factual or that was reference to any particular matter that was a fact. It was just a hypothetical question only.

¶25. The State cites to *Gill v. State*, 485 So. 2d 1047, 1051 (Miss. 1986) for the proposition that once the defendants "opened the door" on the issue that they could not close that door to the prosecution. When a witness "opens the door" by testifying on direct examination that he is "pure as the driven snow," it is permissible for the State to impeach him by inquiring about other bad acts that go to the veracity of the witness's direct testimony. *Quinn v. State*, 479 So. 2d 706, 708 (Miss. 1985); *see also* *Spraggins v. State*, 606 So. 2d 592, 596 (Miss. 1992); *Stewart v. State*, 596 So. 2d 851, 853-54 (Miss. 1992).

¶26. Here, there was a proffer of the question. The witness did not answer the question. In addition, even if there were some prejudice because of the hypothetical question, the trial court gave a specific limiting instruction to the jury to disregard all aspects of the question as a suggestion of fact. Accordingly, the door was opened, and the question was asked for showing Gregory Fox's bias and veracity, which are purposes other than inadmissible character evidence. This issue is without merit.

### 3) Whether the trial court erred by failing to grant a mistrial after the improper comment by prosecution on the failure of defendant to call a witness?

¶27. Fox argues that comments made by the prosecutor during closing arguments improperly prejudiced him and caused a denial of his right to a fair trial as required by the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, § 14 of the Mississippi Constitution. Fox argues that Delaughter improperly commented on Fox's failure to call Demarcus Kelly as a witness. The comments that Fox argues were improper are as follows:

> Mr. Delaughter: At the time that the State's witnesses came forth and presented their evidence, there was some things that they didn't know about. They didn't know that Gregory Fox would have come in and admit his involvement. They didn't know that the defendants would point their fingers at Demarcus Kelly **who didn't come in today** . . .

> Mr. Delaughter: And what you've heard is the blame game. **Let's blame Demarcus Kelly, who incidentally and coincidently is the only one in the house that they made no effort to get**

**their investigator to even go find**.

Mr. Delaughter:... They're pointing the finger at somebody else who **conveniently isn't here**.

(emphasis added).

¶28. After each of these statements, Fox's attorney objected to the State's commenting on the defendant's failure to call a witness. Fox's attorney further moved for a mistrial and asked that the improper comments be stricken. Then, the prosecutor responded as follows:

It was not until this trial that it was evident to the State that they were going to attempt to put it off on Demarcus Kelly...Their (defendants) investigator testified he wasn't even asked to find Demarcus Kelly. This is not a situation where the person would have been as accessible to the State. They (defendants) provided us no reciprocal discovery, no statements of witnesses, it was not until yesterday this came out."

The trial court overruled Fox's objections and motions. The trial judge stated that the prosecutor's argument was proper.

¶29. Fox cites to *Ross v. State*, 603 So. 2d 857, 864 (Miss. 1992) (citing *Brown v. State*, 200 Miss. 881, 887, 27 So. 2d 838, 840 (1946)), for the proposition that generally it is improper for the prosecution to comment on the failure of the defendant to call a witness equally available to both parties. Here, it must first be determined whether Demarcus Kelly was equally available to both parties. If so, did the prosecutor's improper statements result in harmless error?

¶30. *Ross* gives guidance for determining the "equal" availability of a witness. *Id*. The Court in *Ross* stated as follows:

In the 1946 *Brown* case, this Court held that the rule barring comment did not apply where a witness, while technically accessible to both parties, stood more available to the complaining party. In *Brown*, the Court approvingly cited the Supreme Court of Missouri, in which that court reasoned that the mere fact that both parties could subpoena a witness did not make the witness equally available to them. Where a defendant fails to call a witness more available to him and presumptively in a closer relationship with him, the state is fully entitled to comment on the party's failure to call the witness. *Ross*, 603 So. 2d at 864 (citations omitted) (quoting *Brown v. State*, 200 Miss. 881, 27 So. 2d 838, 841 (1946)).

¶31. The test for availability was given in *Brown*. There, this Court stated that availability depends on whether a party has so superior opportunity for knowledge of the witness, or else upon the relationship of the witness to the party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party and against the other.[1] *Brown v. State*, 200 Miss. 881 27 So. 2d 838, 841 (1946). In *Ross*, this Court held that the rule of equal availability did not apply because the referred-to witness was the defendant's brother. *Ross*, 603 So. 2d at 864. This Court considers the closeness of the relationship, such as familial relationships, between a party and a witness in determining availability. *See Ross*, 603 So. 2d at 846 (The rule of equal availability did not apply because one referred-to witness was defendant's brother); *Burke v. State*, 576 So. 2d 1239, 1241 (Miss. 1991) (The fact that the referred-to witness was not a close relative who would ordinarily be expected to be put in an unacceptable compromising position should he be called

to testify was a factor considered for equal availability); ***Madlock v. State***, 440 So. 2d 315, 317 (Miss. 1983) (The facts that referred-to witness was the deceased's common law wife and bore his name tend to make her more accessible to the prosecution); ***Green v. State***, 412 So. 2d 758, 759 (Miss. 1982) (The referred-to alibi witnesses, brother and sister of defendant's girlfriend, were not equally available to the State as to appellant ); ***Brown v. State***, 200 Miss. 881, 27 So. 2d 838, 840 (1946) (The testimony of the referred-to witness was not equally available to the State as to his sister's husband).

¶32. Here, the record does not reflect a close relationship between Demarcus Kelly and a party that would put Demarcus Kelly in "a community of personal interest" with that party. Demarcus Kelly was arrested with Fox. This alone does not suggest that Fox is in a close relationship with Demarcus Kelly. Also, although the power of the prosecution to subpoena a witness does not show equal availability by itself, the State and Fox both had the power to subpoena Demarcus Kelly. ***Id***. Based on the aforementioned cases on availability, these facts do not give rise to an inference that Demarcus Kelly was in a "community of personal interest" with Fox. The party that wishes to make a comment about a witness that was not called has the burden of persuasion to prove that the witness was not equally available. Here, the State has not met that burden. Because Demarcus Kelly was equally available to both sides, Delaughter's comments about the absent witness should not have been allowed.

¶33. The State argues that Demarcus Kelly was a missing witness that the defense was using as a scape goat for Fox. The State argues that it was not prepared to refute testimony about Kelly to the jury. This argument is without merit because it is the State's burden to put on witnesses to establish guilt. ***McVeay v. State***, 355 So. 2d 1389 (Miss. 1978). Moreover, having arrested Kelly at the scene, the State knew that Kelly was both a witness and potentially an offender with respect to the marijuana found.

¶34. The State also asserts that the issue about the missing witness is lacking in merit because there was corroborated eye witness testimony, as well as admissions by Buckley and Gregory Fox, which make it reasonable to infer that Fox consciously exercised dominion and control over the packaged marijuana. These facts support the conclusion that there is substantial evidence to establish Fox's guilt. However, harmless error analysis requires this Court to consider the substantial evidence and determine whether the error by the State is so prejudicial that despite the substantial evidence a reversal is warranted. ***Brock v. State***, 530 So. 2d 146, 154 (Miss. 1988).

¶35. Of course, without substantial evidence to establish guilt the defendant is entitled to an acquittal. Our task in harmless error analysis is to consider whether the evidence is so overwhelming that no reasonable juror could have harbored a reasonable doubt such that that juror would have been unaffected by the error under consideration. ***Floyd v. City of Crystal Springs***, No. 1998-KM-01252-SCT, 1999 WL 1063627, at *11 ¶ 37 (Miss. Nov. 24, 1999); ***Brock***, 530 So. 2d at 154; ***Forrest v. State***, 335 So.2d 900, 903 (Miss. 1976)("An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty."). We further stated in ***Brock*** that a jury is more likely prejudiced where the evidence is close. ***Brock***, 530 So.2d at 154.

¶36. While it was error for the trial court to allow the comments, it was not reversible error. Certainly, there is substantial evidence in the present case to support Fox's guilt. The record indicates that when the police entered the house they observed Fox standing over a counter holding a pair of scissors. On the counter lay two "plastic Tupperware dishes with a large amount of green leafy substance in them." One Tupperware dish contained forty (40) individually wrapped ziplock bags of marijuana. Testimony established that

marijuana is often sold and distributed in ziplock bags. The other Tupperware dish contained loose marijuana that, according to officers, appeared to have been recently cut. Furthermore, Fox was found to have $413 in his pockets. He was unemployed at the time.

¶37. These facts overwhelmingly support Fox's guilt, which was the ultimate issue, and are sufficient to support the jury's verdict, regardless of whether the prosecutor erred in commenting on the absence of a witness. In light of all the facts in this case, the prosecutor's comments, while error, did not unduly or improperly prejudice the jury such that reversal of Fox's conviction is warranted. Clearly, under the *Jackson v. State*, 614 So.2d 965 (Miss. 1993) standard, the jury in the case at bar acted reasonably and based its verdict on the evidence presented, which evidence, absent the prosecutor's comments, was sufficient to establish the Fox's guilt beyond a reasonable doubt.

## CONCLUSION

¶38. Accordingly, Fox's conviction and sentence and the judgment of the Hinds County Circuit Court are affirmed.

¶39. **CONVICTION FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE, AS AN HABITUAL OFFENDER, AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

> **PRATHER, C.J., PITTMAN, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**
>
> **BANKS, JUSTICE, DISSENTING:**

¶40. Because the majority unjustifiably departs from this Court's precedents with respect to improper prosecutorial arguments regarding absent witnesses equally available to both parties, I respectfully dissent.

¶41. The State's multiple comments regarding Fox's failure to call a witness were improper and reversible error. This Court has held that a prosecutor's commenting on the defendant's failure to call a witness, during closing arguments, is reversible error when the witness is equally available to the State. *Holmes v. State*, 537 So. 2d 882, 885 (Miss. 1988); *Madlock v. State*, 440 So. 2d 315, 317 (Miss. 1983). A factual situation close to the case at bar was presented in *Madlock*. There, during closing arguments, the prosecutor commented on the defendant's failure to call a witness as follows:

> The woman that this thing is all about. Rosemary Petty. Now, where is Rosemary Petty? Don't you know, ladies and gentleman of the jury, that if Rosemary Petty would come forth and sit on that witness chair and tell you that Nipper had threatened Madlock, Governor Finch [Madlock's attorney] would have had her under 15 subpoenas.

*Madlock v. State*, 440 So. 2d at 317. The trial court overruled the defense attorney's objection. *Id*. This Court stated that "because of the prejudicial and erroneously vigorous statements of the prosecuting attorney in his final arguments and the lower court's overruling appellant's objection thereto, we are forced to reverse the cause and remand for another trial." *Id*. at 318.

¶42. In *Holmes*, this Court stated, "[a]pplying the holding in *Madlock* to the facts in this case, the Court

points out that Mr. Cox [the prosecutor] blatantly commented on the failure of the defense to call Mr. Mason. This Court submits that these actions amount to prejudicial error." *Holmes*, 537 So. 2d at 885. In *Holmes*, the improper comment made by the prosecutor was, "Mr. Mason, his good friend. Have you heard from him?" *Id*. There, the Court reversed and remanded for a new trial. *Id*.

¶43. Here, the comments by the prosecutor were as follows:

> Mr. Delaughter : At the time that the State's witnesses came forth and presented their evidence, there was some things that they didn't know about. They didn't know that Gregory Fox would have come in and admit his involvement. They didn't know that the defendants would point their fingers at Demarcus Kelly **who didn't come in today**...

> . . . .

> Mr. Delaughter: And what you've heard is the blame game. **Let's blame Demarcus Kelly, who incidentally and coincidently is the only one in the house that they made no effort to get their investigator to even go find**.

> Mr. Delaughter:... They're pointing the finger at somebody else who **conveniently isn't here**.

(emphasis added). In accordance with *Holmes* and *Madlock*, the improper comments by the prosecutor denied Fox his right to a fair trial as established by our case law. *Id*.

¶44. The majority suggests that the error was harmless citing *Brock v. State*, 530 So. 2d 146, 154 (Miss. 1988). In *Brock*, the prosecutor made the following comments:

> But then what did he tell you about Acue Wicks? He said, "Acue Wicks is about my age, 31 or 32, and his son is a bondsman." And I submit to you, ladies and gentlemen, that is a boldfaced lie. If Acue Wicks was 31 or 32 years old and he had a son who was old enough to be a bondsman and drive a car, I'm telling you that Acue Wicks and that son would have been down here under subpoena to tell you that themselves.

*Id*. There, the trial judge sustained the defendant's objection to the remarks, but overruled his motion for a mistrial. *Id*. This Court considered the substantial evidence of Brock's guilt, the fact that the trial judge sustained the objection to the improper statement, Brock's failure to request that the trial court admonish the jury to disregard the comments and the applicable case law and concluded that the comment, while clearly error, was harmless. *Id*. at 155.

¶45. This case is different. First, the objection was not sustained but instead overruled on three separate occasions. The trial court's persistent refusal to sustain Fox's valid objection clearly harmed Fox. Additionally, while there is substantial evidence that Fox possessed the marijuana, the evidence that he was guilty of possession with intent to distribute is not so overwhelming as to render the error harmless. Given the fact that there were six other persons in the room, the testimony that the marijuana was actually the property of one of those other persons could possibly be the source of reasonable doubt for a rational juror on the issue of Fox's intent. The prosecutor's repeated referral during closing arguments to Fox's failure to call Demarcus Kelly to the stand, suggesting that Fox would have called him if Kelly were the guilty party, was enough to prejudice the jury. The fact that both Demarcus Kelly and Fox could be guilty of possession with the intent to distribute does not negate the immeasurably prejudicial effect of the prosecution's

improper comments on the jury. I would reverse the judgment below and remand this case for a new trial. Accordingly, I dissent.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. This Court's ruling in ***Brown*** is as follows:

The Supreme Court of Missouri, discussing this subject, said: "Now the term 'available' in the connection in which we are using it does not mean merely available or accessible for the service of a subpoena, since any witness who may be found may be subpoenaed at the instance of either party to any cause. Quite to the contrary, the 'availability' of a witness to one or the other of the parties to an action depends either upon such party's superior means of knowledge of the existence and identity of the witness, or else upon the relationship of the witness to the party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party and against the other. In other words, a witness may properly be said to have been peculiarly 'available' to one party to an action, so that upon that party's failure to have produced him in court an inference arises that his testimony would have been unfavorable, when such party had so superior an opportunity for knowledge of the witness, or there was such a community of personal interest between the party and the witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that it was known or feared that his testimony would be damaging rather than favorable." ***Brown v. State***, 200 Miss. at 889-90, 27 So. 2d 838, 841 (quoting ***Huskey v. Metropolitan Life Ins. Co.,*** 94 S.W.2d 1075, 1078 (Mo. Ct. App. 1936).