IRVING, P.J.,
for the Court:
¶ 1. On March 2, 2011, a jury found Barry Lemax Melton guilty of possession of a controlled substance with intent to sell or distribute. The Harrison County Circuit Court sentenced Melton as a habitual offender to forty years in the custody of the Mississippi Department of Corrections. Melton filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which the circuit court denied. Feeling aggrieved, Melton appeals and argues that the circuit court erred in: (1) admitting evidence obtained in violation of his Fourth Amendment rights, (2) denying his motion for a new trial, (3) denying his motion for a JNOV, and (4) failing to order a mistrial.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On January 13, 2009, Officer Luis Garcia, with the Gulfport Police Department, stopped Melton’s vehicle when he made a right-hand turn without using a turn signal. When Officer Garcia approached Melton’s vehicle, he requested Melton’s driver’s license. Melton informed Officer Garcia that his driver’s license had been suspended. Officer Garcia instructed Melton to exit his vehicle. After Melton exited his vehicle, Officer Garcia asked Melton if he had any weapons. Melton responded that he had a knife and reached toward his jacket pocket. Officer Garcia told Melton not to reach for the knife and ordered him to place his hands on the vehicle. Officer Garcia then removed Melton’s knife and frisked him. He felt a bulge in Melton’s left pocket, which turned out to be a black pouch. Officer Garcia removed the pouch, opened it, and found two glass pipes. After placing Melton under arrest, Officer Garcia called a tow truck to take Melton’s vehicle to the police impound lot. At some point prior to the tow truck’s arrival, Officer Tim Adams of the Gulfport Police Department arrived on the scene to conduct an inventory search of Melton’s vehicle. Officer Adams testified that the search was conducted according to the Gulfport Police Department’s policy.
¶ 4. During the inventory search, Officer Adams discovered a black pouch on the floor next to the driver’s seat. Officer Adams opened the pouch and found two clear tubes containing a white substance and three empty plastic “baggies.” He approached Melton, who was by then secured in Officer Garcia’s vehicle, read him his Miranda[1] rights, and asked Melton to identify the white substance. Melton told Officer Adams that the white substance was methamphetamine. Melton was then taken to the Gulfport Police Department and booked for possession of a controlled substance.
¶ 5. At the police department, Sergeant Aaron Fore interviewed Melton. During the interview, Melton stated that he had made seven grams of methamphetamine that day. He said that he had sold approximately two grams, given some away, and used approximately .5 grams before Officer Garcia arrested him. Melton also confirmed that he told Officer Garcia that his driver’s license had been suspended *608 and that he did not use a turn signal because the signal light on the right side of his vehicle did not work. Additionally, Melton admitted that he had intentionally “stashed the dope” to keep both Officer Garcia and his companion[2] from seeing it.
¶ 6. Dr. Thomas Pittman, who was the director of the drug-identification laboratory that weighed and tested the white substance found in Melton’s vehicle, testified that the substance weighed 1.63 grams and was methamphetamine. Sergeant Fore testified that, based on his training and experience with narcotics cases, the amount of methamphetamine possessed for personal use would be less than .25 grams.
¶ 7. Prior to trial, Melton filed a motion to suppress all evidence stemming from the traffic stop, which the circuit court denied. Melton also filed a motion in li-mine requesting that the circuit court exclude “any and all evidence that may be presented as 404(b)[3] evidence against him” and “any and all evidence regarding any uncharged criminal actions.” The circuit court granted the motion. Nevertheless, during Sergeant Fore’s testimony, the State introduced Melton’s unredacted, audio-recorded police statement, where Melton suggested that he had committed other criminal acts.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Fourth Amendment Violation

¶ 9. Melton argues that the circuit court erred in admitting evidence stemming from the traffic stop. Melton contends that the traffic stop was illegal; thus, any evidence recovered during the stop was inadmissible.
¶ 10. Appellate courts apply a mixed standard of review to Fourth Amendment claims. Eaddy v. State, 63 So.3d 1209, 1212 (¶ 11) (Miss.2011). Determinations of reasonable suspicion or probable cause are reviewed de novo. Id. However, the circuit court’s factual findings are reviewed under the substantial-evidence and clearly-erroneous standards. Id. Here, there are no factual disputes concerning the circumstances surrounding the traffic stop. Therefore, we will only review the circuit court’s application of the law to the undisputed facts.
 ¶ 11. The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution prohibit unreasonable searches and seizures. Dies v. State, 926 So.2d 910, 917-18 (¶ 21) (Miss.2006). The Fourth Amendment’s reasonableness requirement extends to brief investigatory stops of a vehicle. Id. at 918 (¶ 21). The Mississippi Supreme Court has held that an investigatory stop is reasonable as long as the officer has “probable cause to believe that a traffic violation has occurred.” Moore v. State, 986 So.2d 928, 934 (¶ 19) (Miss.2008) (quoting Harrison v. State, 800 So.2d 1134, 1138 (¶ 18) (Miss.2001)). In Mississippi, the test for probable cause is the totality of the circumstances. Id. (quoting Harrison, 800 So.2d at 1138 (¶ 18)).
¶ 12. Melton contends that he was the victim of an illegal, pretextual traffic stop. The State responds that Melton’s violation of Mississippi Code Annotated section 63-3-707 (Rev.2004) provided probable cause for Officer Garcia to initiate the *609 stop. Section 63-3-707 provides in pertinent part:
No person shall turn a vehicle from a direct course upon a highway unless and until ... after giving a clearly audible signal ... or after giving an appropriate signal in the manner provided in this article in the event any other vehicle may be affected by such movement.

A signal of intention to turn right or left shall be given continuously for a reasonable distance before turning.

(Emphasis added). Melton argues that he was not required to use a turn signal because his and Officer Garcia’s vehicles were the only vehicles on the road, and Officer Garcia’s vehicle was traveling at a safe distance behind his. We disagree.
¶ 13. Section 63-3-707 requires a driver turning right or left to give a continuous signal for a reasonable distance before turning in the event any other vehicle may be affected by such movement. Melton urges a very restrictive interpretation of section 63-7-707, focusing upon the word “affected.” Apparently, he believes that another vehicle is affected only if there is a danger of the other vehicle being involved in an accident with the non-signaling vehicle. We decline to embrace such a restrictive construction of the statute, as other prudent drivers on the highway may well be affected by the failure of a driver to signal his intention to turn, even when no accident is likely to occur as the result of the driver’s failure to give a proper signal. The fact that Officer Garcia was traveling at a safe distance behind Melton is of no moment. All drivers are required to drive just as Officer Garcia was driving because every driver is supposed to drive at a safe distance behind the preceding vehicle. Thus, Melton violated section 63-3-707 by failing to signal, even though there was no imminent threat of a collision between his vehicle and Officer Garcia’s. Accordingly, Officer Garcia had probable cause to stop Melton’s vehicle.
¶ 14. It follows then that the subsequent searches of Melton and his vehicle were lawful. Officer Garcia arrested Melton for driving with a suspended license, and he frisked Melton as a search incident to Melton’s arrest. It is well established that there is no Fourth Amendment violation when a person under lawful custodial arrest is subjected to a full search of his person. Johnson v. State, 999 So.2d 360, 366 (¶ 24) (Miss.2008). Therefore, the black pouch containing the glass pipes was admissible.
¶ 15. Additionally, the inventory search of Melton’s vehicle, during which Officer Adams discovered the methamphetamine, was conducted according to Gulfport Police Department policy and was limited to the areas of Melton’s vehicle where his property could reasonably be expected to be found. See Robinson v. State, 418 So.2d 749, 754-55 (Miss.1982) (warrantless inventory search of a vehicle is constitutionally permissible provided that it is limited in scope and conducted pursuant to standard police procedures). Accordingly, the circuit court did not err in denying Melton’s motion to suppress. This issue is without merit.

2. Motion for a New Trial

¶ 16. Melton argues that he is entitled to a new trial because the State failed to prove his intent to distribute methamphetamine. Particularly, Melton asserts that the State failed to prove that the amount of methamphetamine in his possession was not a reasonable amount to hold for personal consumption.
¶ 17. “A motion for a new trial challenges the weight of the evidence.” Knight v. State, 72 So.3d 1056, 1064 (¶ 31) (Miss.2011) (citing Bush v. State, 895 So.2d *610 886, 844 (¶ 18) (Miss.2005)). An appellate court will not disturb a jury’s verdict unless it “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (quoting Bush, 895 So.2d at 844 (¶ 18)). Additionally, an appellate court must view the evidence in the light most favorable to the verdict. Id. at 1065 (¶ 34).
¶ 18. Our supreme court has stated that “[t]here is no magic number as to quantity with respect to evidence of intent to distribute.” Fox v. State, 756 So.2d 753, 759 (¶ 19) (Miss.2000). However, “[wjhere the amount is greater than what one might ordinarily have for personal consumption, it does create an inference of intent to distribute.” Id. Additionally, “[i]n the case of drug sales, ... evidence of prior involvement in the drug trade [is admissible] to prove intent to distribute.” Palmer v. State, 939 So.2d 792, 795 (¶ 9) (Miss.2006) (citations omitted).
¶ 19. The State offered uncontradicted evidence that less than .25 grams of methamphetamine is the typical amount possessed for personal consumption. At the time of his arrest, Melton possessed over six times that amount. Thus, the quantity alone created an inference of Melton’s intent to distribute. Moreover, the jury heard Melton’s statement to the police in which he admitted that he was involved in the drug trade, even going so far as to classify himself as “the best cook on the Coast.” Thus, we cannot say that the jury’s verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.

3. Motion for a JNOV

¶ 20. Melton also contends that the circuit court erred in denying his motion for a JNOV because the State presented insufficient evidence that he intended to sell or distribute methamphetamine. A motion for a JNOV challenges the legal sufficiency of the evidence. Knight, 72 So.3d at 1063 (¶ 24). All credible evidence must be viewed in the light most favorable to the State. Id. An appellate court will uphold the circuit court’s ruling if:
the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Id. (internal quotations omitted) (quoting Bush, 895 So.2d at 843 (¶ 16)).
¶ 21. Melton maintains that the amount of methamphetamine found in his possession on the day of his arrest was only indicative of personal use. As previously discussed, the State presented evidence that, at the time of his arrest, Melton possessed over six times the typical amount held for personal use. The amount alone created an inference of Melton’s intent to distribute methamphetamine. Additionally, during the inventory search of Melton’s car, police officers found baggies commonly used to package methamphetamine for sale. Furthermore, Melton admitted in his police statement that he had already sold some of the methamphetamine. Accordingly, we find that there is sufficient evidence to support the juiy’s verdict. This issue is without merit.
*611 ⅜. Mistrial
¶22. Melton argues that the circuit court should have sua sponte ordered a mistrial when the State introduced his unredacted, audio-recorded police statement because it contained evidence prohibited by the circuit court’s grant of his motion in limine. “The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant’s case.... ” Parks v. State, 930 So.2d 383, 386 (¶ 8) (Miss.2006) (citing Tate v. State, 912 So.2d 919, 932 (¶ 41) (Miss.2005)). The circuit court’s decision to declare a mistrial is reviewed for abuse of discretion. Id.
¶ 23. After the circuit court granted Melton’s motion in limine, his counsel agreed to allow the statement into evidence without first seeking to have any portion of it redacted, even though it contained the evidence that Melton sought to have excluded, namely the fact that he had sold methamphetamine on the day of his arrest. The following exchange occurred during Sergeant Fore’s testimony:
Q: Did Mr. Melton choose to speak with you?
A: Yes, sir, he did.
Q: Was his statement that you took, was it a recorded statement?
A: Yes, sir, it was.
Q: Did he say where he had been earlier that evening?
A: Yes, he did.
Q: What did he say?
A: Mr. Melton stated to me that he had been at a friend’s house.
[ATTORNEY FOR DEFENDANT]: Judge, if I may, it’s my understanding we are going to introduce the recorded statement, I think that would be the best evidence.
[BY THE COURT]: Are we going to play the tape?
[ATTORNEY FOR THE STATE]: Yes, Your Honor.
[BY THE COURT]: Let’s get him to identify and play it.
[[Image here]]
[ATTORNEY FOR THE STATE]: Detective Fore, take a look at what’s been marked as [the] State’s Exhibit 4.... Can you tell me if you recognize this?
A: Yes, sir. It’s a compact disc containing the audio[-]reeorded statement [that] I took from Mr. Melton.
S: * ⅜
Q: Is it a fair and accurate representation of the statement that you took that day?
A: Yes, it is.
[ATTORNEY FOR THE STATE]: May I publish to the jury, Your Honor?
[BY THE COURT]: Yes, sir.
¶ 24. It is clear from this exchange that Melton’s attorney preferred that the recorded statement be played for the jury. In fact, she characterized the statement as the “best evidence” of Melton’s conversation with Sergeant Fore and did not make any additional objections to the statement. We fail to see how Melton can now argue that the circuit court abused its discretion in admitting the statement, even though the court had granted his motion in limine, when it was Melton’s attorney who urged its admission without first seeking to have the statement redacted. Accordingly, this issue is without merit.
¶ 25. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION AS A HABITUAL OFFENDER OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO SELL OR *612 DISTRIBUTE AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN RESULT ONLY.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Melton was traveling with Sharon Lott. Lott was also arrested on the day of the incident.

. Rule 404(b) of the Mississippi Rules of Evidence.