8375

STATE v. BETHUNE.

1. TRIAL.—Where a motion for change of venue in a criminal case is not made at the proper time and on the showing made on appeal from motion refusing new trial on after-discovered evidence, the Court would have refused it as no *prima facie* showing was made, the motion on the ground that he has not had a fair and impartial trial is refused.

2. JUROR.—The refusal to ask a juror on his *voir dire* if he would be influenced against defendant because he was a negro, *held* not reversible error, when the juror had been asked the usual questions and answered them in such way as to show he was unbiased and for the further reason that no abuse of discretion is shown in refusing the question.

3. ATTORNEYS.—That appellant's attorney was not in condition mentally to properly conduct a criminal case is not ground for reversal when the record shows that he did not do or leave undone anything that would probably have affected the result.

4. PREJUDICE.—A VERDICT should not be set aside because there is a strong public prejudice against the accused unless it is made to appear the verdict was influenced by it.

5. NEW TRIAL.—An order refusing a motion for new trial on after-discovered evidence will not be reviewed unless it is made to appear that there was an abuse of discretion in refusing the motion or that the exercise of discretion in refusing the motion was controlled by some error of law.

6. APPEAL.—Under the peculiar circumstances of this case and because a human life is at stake, the Court has waived all formalities and carefully considered this record as well as those of former trials of this case in this Court.

7. WRIT OF ERROR.—Petition for writ of error refused.

Before COPES, J., Clarendon, September term, 1911. Affirmed.

Indictment against Willie Bethune. Defendant appeals.

*Mr. John H. Clinfton,* for appellant.

*Solicitor P. H. Stoll,* contra.

The opinion herein was filed on July 12, 1912, but petition for writ of error to Supreme Court of the United States was refused and remittitur ordered down on

November 26, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. At the June term, 1909, of the Court of General Sessions for Clarendon county, defendant was convicted of murder, and sentenced to death. On appeal, his conviction was sustained. 86 S. C. 143, 67 S. E. 466. A petition for rehearing was presented, one of the grounds being that, since his conviction, defendant had become insane. The petition was dismissed without prejudice to defendant to plead his insanity, when called upon to say why a new day for execution of the sentence should not be assigned. 86 S. C. 154. At the June term, 1910, when so called upon, he pleaded that he was insane. Upon that issue, a trial by jury was had, and the verdict was that he was sane. On appeal, that judgment was affirmed, and the case was remanded for the purpose of having another day assigned for execution of the sentence. 88 S. C. 401,

71 S. E. 29. This was done at the June term, 1911. Thereafter, on motion of defendant, execution of the sentence was stayed, in order that he might make a motion for a new trial on the ground of after-discovered evidence, and on the ground that he had not had such fair and impartial trial as is guaranteed by the Constitution. That motion was heard at the September term, 1911, and refused, and, from the order refusing it, this appeal was taken.

The murder, of which defendant stands convicted, was committed February 21, 1909. Soon after the defendant was arrested, the sheriff received information that a mob was being organized to lynch him, and, by order of the Governor, he was carried to the State penitentiary for safe keeping, and was kept there until he was carried back for trial at the next succeeding term of Court in June. He was arraigned on Wednesday, June 9, and his trial was set for and had on Saturday, the 12th, which was the last day of the Court.

Unusual interest on the part of the public was taken in the trial, and there was considerable feeling of resentment and indignation against the defendant, which was manifested by threats on the part of the friends and relatives of the deceased that, if he were convicted of anything less than murder, he would be lynched. These threats were brought to the attention of the presiding Judge, who caused ten or twelve extra deputies to be sworn in to preserve order and protect the prisoner. During the trial, the court-house was crowded to standing room. The space within the bar was filled, and some of the audience were allowed to sit on the steps leading to the Judge's bench.

At one time—just when, it does not appear—the prisoner's attorney had been mentally unbalanced and had been in a sanitarium for treatment; but for some time immediately before the trial, he had been attending to his business, and was employed by the prisoner's stepfather to defend him. The solicitor admits, in the "case," that he was unbalanced

during the trial, and that he remained so, until after the trial on circuit of the issue as to the prisoner's sanity. Soon after that trial, he was carried to a sanitarium for treatment, and has not since participated in the defense.

Notwithstanding some of the points raised on this appeal were considered and decided on the first appeal, we have *in favorem vitae,* at the earnest request of appellant's attorney, whose services in behalf of appellants are entirely gratuitous, carefully reconsidered them; but we find no reason to change or modify the previous decision.

The first of these contentions is that, under the circumstances, the appellant was denied the right to move for a change of venue. In addition to the ground upon which this point was decided on the first appeal, we may say that the facts made to appear on that appeal and also on this do not make a *prima facie* case calling for a change of venue. Therefore, if the question were an open one, and if the motion had been made in due time, the Circuit Court would have refused it on the showing made. Hence, appellant was not prejudiced by the failure to make the motion. And certainly, where the failure to make such motion was due to no error on the part of the Court, at least a *prima facie* case, entitling appellant to a change of venue, should be made before this Court would be warranted in reversing the judgment.

We notice next the ground that appellant's attorney was not allowed to ask a juror, on his *voir dire,* whether he would be influenced, in passing on the evidence, by the fact that defendant is a negro. Mr. Justice Woods, in concurring in the opinion of Mr. Chief Justice Jones on the first appeal, stated that, if it had appeared that defendant had exhausted his peremptory challenges, he would have been inclined to sustain the exception to the ruling of the Circuit Court on that point. It now appears that the prisoner had exhausted his peremptory challenges. Notwithstanding that fact, and the great

weight to which the intimation of the learned Justice (who did not sit at the hearing of this appeal) is entitled, after careful consideration, we are constrained to adhere to the previous decision. The juror had already sworn that he was not conscious of any prejudice or bias for or against the prisoner. Therefore, his answer to the proposed question—if he had been allowed to answer—must have been in the negative. After the statutory questions have been asked and answered, any further examination of a juror on *voir dire* must be left to the discretion of the trial Judge, which is subject to review only for abuse thereof.

The mental condition of the appellant's former attorney is not ground for a new trial, because it has not been made to appear that it caused prejudice to his case. It does not appear that he did or left undone anything which would probably have affected the result. If there had been any apparent prejudicial mismanagement of the case, we feel sure that it would not have escaped the vigilance of the presiding Judge, who would have taken the necessary steps to safeguard the defendant's rights. The case was managed in this Court with a zeal and skill equal to, if not above, the average; and there is nothing in the record in either of the former appeals, or in the evidence on this motion, which leads to the conclusion that the appellant's rights were not duly protected, or that he suffered any detriment by reason of the unfortunate condition of his attorney.

The mere existence of a strong public prejudice against the accused is not necessarily ground for a change of venue. It must be made to appear that it is such that he cannot get a fair trial. *A fortiori,* the mere existence of a strong prejudice against the accused does not warrant setting aside a verdict of guilt, unless it is made to appear that the verdict was influenced by it. When the existence of such prejudice as would call for a change of venue is known, or by the exercise of due diligence, could

be known, to the defendant or his attorney, a motion to change the venue should be made. The defendant will not be allowed to speculate on chances, and if the verdict goes against him, obtain a new trial because of such prejudice, unless a very clear case, calling for the exercise of the discretion vested in the Court, is made out. Now, in this case, it has not been made to appear that the prejudice in the community against the defendant was so great that it influenced the verdict, or that any of the things relied upon by defendant to show such prejudice had any effect upon the result. The burden was upon defendant to prove that fact by clear and convincing evidence. The presumption is the other way. We are bound to presume that the conscientious and learned Judge who presided at the trial saw to it, as was his duty, that defendant had a fair and impartial trial, according to law, and also, that it was had with the dignity and decorum which becomes the administration of justice, and which the gravity and solemnity of the issue demanded. We must presume, until the contrary is made to appear, that good men and true, who are under the sanction of a solemn oath to render a true verdict, will be governed by their honest judgment of the evidence, and that neither passion nor prejudice nor the influence of the mob nor any other improper influence will be allowed to swerve them from the path of duty.

It is greatly to be regretted that it should be necessary to hold a trial in any other than calm and judicial atmosphere. But it is natural that foul murder or other brutal crime should arouse excitement and indignation among the people, and, in such circumstances, we cannot expect normal conditions. As was said by Mr. Justice Woods in *State* v. *Weldon,* 91 S. C. 36: "Ideal conditions, it is true, are not to be expected, and verdicts should not be set aside by an appellate court for misconduct in a trial, unless the evidence is clear and convincing that extraneous influences so interfered with the conduct of the trial, or so pressed upon

the jury, as to become factors in the result. A vast number of cases might be cited to show that this Court will refuse to heed unsubstantial charges that trials have not been fair."

While that case which is relied on by appellant, had some points of similarity to this, in its most essential features there were marked differences. There, a special Court was ordered to try the defendant soon after the crime was committed; and they were tried in the midst of intense and bitter public excitement against them. They had no counsel. The presiding Judge appointed counsel for them, who, on account of the mob spirit, which was so prevalent that it invaded the courthouse itself, and the threats of lynching which he heard as he went into the courthouse in response to the call of the presiding Judge, felt constrained to forego his right to demand the three days allowed by law, after arraignment, for preparation for trial, and went into the trial at once, without the least time for preparation, or to get defendants' witnesses, under compulsion of the fear that, if he did not, his clients would be lynched. During that trial, the spectators were allowed to so crowd the space within the bar, and press upon the Court and jury, that defendants' counsel could not see the witnesses while he was cross-examining them, and he had frequently to call on the Court to order the crowd back, so that he could see the witness he was cross-examining; and he did not see the jury, because of the intervening crowd, until he stood before them to make his argument. On the other hand, this defendant had from February 21 till June 12 to prepare for trial. To be sure, he was in the State penitentiary nearly all of that time, but he was at liberty to communicate with his attorney and his friends, who were looking after his interests. His stepfather employed counsel for him—just how long before the trial does not appear—but no point was made that he was not employed or could not have been employed long enough before to have had ample time to get

ready for trial. The three days after arraignment allowed by law for preparation for trial were demanded and allowed. Besides these, there are a number of other distinguishing features.

As to the ground of after-discovered evidence: "The rule is well settled that a motion for a new trial on after-discovered evidence is addressed to the discretion of the Circuit Court, and the refusal of such motion will not be reviewed, unless it appears that there was abuse of discretion, or that the exercise of discretion was controlled by some error of law. *State* v. *David*, 14 S. C. 432; *State* v. *Workman*, 15 S. C. 547; *Sams* v. *Hoover*, 33 S. C. 404, 12 S. E. 8; *Seegars* v. *McCreery*, 41 S. C. 549, 19 S. E. 696; *Peoples* v. *Warner & Co.*, 51 S. C. 405, 29 S. E. 2. Such a motion must generally depend on matters of fact, over which this Court has no jurisdiction in actions at law." *State* v. *Bradford*, 87 S. C. 546, 549, 70 S. E. 308. Applying the principles above stated to this case, it has not been made to appear that there was abuse of discretion in refusing the motion, or that the exercise of discretion was controlled by error of law. The refusal of the motion necessarily implied a finding of all the material facts involved against appellant, and such findings are not reviewable. It is inconceivable that the Circuit Judge would have refused the motion, if he had been satisfied by the evidence that, for any of the reasons assigned, defendant had not had a fair and impartial trial.

Under the peculiar circumstances of this case, and in view of the fact that a human life is at stake, we have waived all formalities and have carefully examined this record, as well as those of the former trials, but we have not been satisfied that the defendant has not had a fair and impartial trial, and been justly condemned.

Therefore, it is the judgment of this Court that the order appealed from be affirmed, and that the case be remanded to the Circuit Court for the purpose of having another day

assigned for the execution of the sentence heretofore imposed upon the defendant.

Affirmed.

MESSRS. JUSTICES WOODS *and* FRASER, *disqualified.*

Petition for writ of error refused by formal order, November 26, 1912.