577 S.E.2d 719

**The STATE, Respondent,**

v.

**Yukoto Eugene CHERRY, Appellant.**

No. 3296.

Court of Appeals of South Carolina.

Heard Oct. 11, 2000.

Decided Feb. 12, 2001.

Jeanne A. Pearson, of Kennedy, Covington, Lobdell & Hickman; Thomas F. McDow, both of Rock Hill; and Chief Attorney Daniel T. Stacey, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Attorney General Toyya Brawley Gray, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

STILWELL, Judge:

A jury convicted Yukoto Eugene Cherry for possession of crack cocaine with intent to distribute. The trial court sentenced him to five years imprisonment, imposed a fine of $25,000, and recommended he receive drug abuse treatment while in prison. Cherry appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Just before midnight on July 31, 1998, Officer Steven Parker of the Rock Hill Police Department stopped a car driven by Cherry's sister for two traffic violations. Cherry was a passenger in the back seat. While Officer Parker sat in his patrol car writing citations, another backup officer arrived and saw Cherry's sister stuff a pistol into a diaper bag. After arresting her, the officers ordered the passengers out of the car to check for additional weapons. Cherry had no weapons, but Officer Parker discovered a small bag containing approximately eight rocks of crack cocaine in his watch pocket. He also seized $322 in cash from Cherry.

Cherry was indicted for possession of crack cocaine with intent to distribute and possession of crack cocaine within proximity of a public park. At the conclusion of the State's case, the trial court granted Cherry's motion for a directed verdict on the charge of possession within proximity of a public park. The court denied his motion for a directed verdict on the charge of possession with intent to distribute and the jury found him guilty. Cherry asserts a number of alleged errors on appeal.

## DISCUSSION

### I. Seating Arrangements

■ Cherry asserts the trial court erred in denying his request to sit at the table closest to the jury. We disagree.

Immediately after the prosecutor called Cherry's case, his counsel made a motion for the defense to sit at the table closest to the jury. At the time, the prosecution occupied that table. After entertaining argument from both sides, the court denied Cherry's request, finding the parties were seated "very appropriately."

Cherry correctly notes this precise issue was raised on appeal to our supreme court in *State v. Corn*, 215 S.C. 166, 54 S.E.2d 559 (1949). However, his reliance on that case is misplaced. The supreme court reversed the conviction, but specifically declined to address several issues, including the question of whether the defense was improperly required to relinquish the seats closest to the jury. *Id.* at 172, 54 S.E.2d at 561. We are convinced that nothing in the supreme court's opinion can be construed as a ruling on that issue.

■ We find the trial court did not abuse its discretion in refusing to allow Cherry to occupy the table closest to the jury. It is tradition and custom in this state that the party with the primary burden of proof sits at the table in closest proximity to the jury. Furthermore, "[t]he general rule in this State is that the conduct of a criminal trial is left largely to the sound discretion of the presiding judge and this Court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way." *State v. Bridges*, 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). Clearly, the court's discretion extends to the parties' seating arrangements. *See also State v. Lee*, 255 S.C. 309, 313, 178 S.E.2d 652, 654 (1971) (holding court did not abuse its discretion by refusing defendant's request to remove the victim's brother from the prosecution's table). The trial court's ruling did not prejudice Cherry's rights. His motion was properly denied.

### II. Voir Dire Questions

■ Cherry argues the trial court erred in refusing to ask his proposed voir dire questions. We disagree.

Prior to jury selection, Cherry's counsel submitted eight written questions which he requested the court ask the potential jurors on voir dire. The questions asked whether the jurors understood the importance of juror honesty; whether they would report a juror who engaged in misconduct; whether they were willing to presume a defendant innocent until proven guilty despite the fact that he had been arrested by the police; whether they believed police officers are more honest than other citizens; whether the defendant's failure to testify would affect their views of his guilt or innocence; whether they were biased against African–Americans; whether they were biased for or against any of the attorneys; and whether they had ever had more than $300 on their person. The court denied the request, ruling the questions regarding potential biases involving African–Americans or the attorneys involved were covered by the court's standard voir dire questions, and that the others were inappropriate.

The questions to be asked on voir dire are provided by S.C.Code Ann. § 14–7–1020 which states in pertinent part:

> The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein. . . .

S.C.Code Ann. § 14–7–1020 (Supp.2000).

The trial court has the responsibility to focus the scope of voir dire examination as described in section 14–7–1020. *Wilson v. Childs,* 315 S.C. 431, 438, 434 S.E.2d 286, 291 (Ct.App.1993). "After the statutory questions have been asked and answered, any further examination of [the jury] on voir dire must be left to the discretion of the trial judge, which is subject to review only for abuse thereof." *State v. Bethune,* 93 S.C. 195, 199, 75 S.E. 281, 282 (1912). As a general rule, "the trial court is not required to ask all voir dire questions submitted by the attorneys." *Wall v. Keels,* 331 S.C. 310, 317, 501 S.E.2d 754, 757 (Ct.App.1998). It appears Cherry's proposed questions were designed to establish a juror profile and to influence those jurors who would be selected rather than to uncover bias. Cherry does not argue that the court failed to ask the statutorily required questions. We are confident the

court met the requirements of section 14–7–1020 and find no abuse of discretion in its refusal to ask the additional questions.

### III. *Batson* Motion

■ Next, Cherry maintains the trial court erred in its denial of his *Batson* [1] motion. We disagree.

After jury selection, Cherry moved to quash the jury, arguing the State used its peremptory challenges in a racially discriminatory manner by striking non-whites. The assistant solicitor responded that the three strikes Cherry complained of were exercised against persons with criminal convictions for assault and battery, passing fraudulent checks, and driving under the influence. The court found those reasons racially neutral and asked if Cherry had any evidence that the stated reasons were mere pretext.

Cherry's counsel asked to conduct additional voir dire to determine whether any member of the jury had been convicted of the same offenses. After the court denied that request, the assistant solicitor offered the defense an opportunity to look at the NCIC background checks performed on each juror. Although defense counsel indicated he wanted to examine those documents, it does not appear he did so immediately as offered. The assistant solicitor then informed the court that none of the seated jurors had a record of the criminal convictions in question, and the court announced the reports would be made a part of the record. The parties dispute whether this was ever done. In a post trial motion, Cherry argued that because the NCIC reports dated the day of jury selection were not immediately admitted into the record, the court's order that those specific reports become part of the record was an impossibility.

■ The trial court must hold a *Batson* hearing when members of a cognizable racial or gender group are struck and the opposing party requests a hearing. *State v. Haigler*, 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999). During the hearing, the proponent of the peremptory strikes must pres-

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

ent a racially neutral explanation. *Id.; State v. Adams,* 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996). Once this is done, the burden shifts to the strike's opponent to show the reason or reasons given were merely pretextual. *Haigler,* 334 S.C. at 629, 515 S.E.2d at 91; *Adams,* 322 S.C. at 124, 470 S.E.2d at 372. Thus, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Adams,* 322 S.C. at 124, 470 S.E.2d at 372 (quoting *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). If "the record does not support the solicitor's stated reason upon which the trial judge has based his findings, however, those findings will be overturned." *State v. Tucker,* 334 S.C. 1, 9, 512 S.E.2d 99, 103 (1999).

We agree with the trial court that the reasons the assistant solicitor offered to explain the strikes were facially race-neutral. Thus, the burden shifted back to Cherry to prove pretext. He offered no evidence of pretext and thus simply failed to meet his burden. The record supports the State's explanations for the strikes. Moreover, we are not persuaded to reverse the court's ruling because the proper documents bearing certain dates were never admitted into the record. The record reflects the State offered Cherry an opportunity to review the exact documents it used to strike the jurors and that he failed to seize this opportunity. Furthermore, the court's ruling that the State's explanations were race-neutral is supported by the assistant solicitor's statement as an officer of the court, which the court accepted and which Cherry has not proven false or pretextual. *See, e.g., State v. Patterson,* 307 S.C. 180, 182–83, 414 S.E.2d 155, 157 (1992) (noting the trial court's findings regarding purposeful discrimination rest largely upon its evaluation of the prosecutor's credibility and are afforded great deference).

## IV. Evidence

Cherry also challenges the trial court's admission of the video tape of his arrest as well as the money and drugs seized from his person during the arrest. We find no abuse of discretion.

The decision to admit or exclude evidence is within the trial court's sound discretion, and its ruling will be not be

disturbed unless an abuse of discretion is shown. *State v. Tucker*, 319 S.C. 425, 428, 462 S.E.2d 263, 265 (1995). Additionally, to warrant reversal, the defendant must show the erroneous admission resulted in prejudice. *State v. Thompson*, 305 S.C. 496, 502, 409 S.E.2d 420, 424 (Ct.App.1991).

## A. Arrest Tape

 Officer Parker's patrol car was equipped with a camera which records both audio and video. During his testimony, the State attempted to show the original video tape containing Cherry's arrest to the jury. Although the State had previously given the defense a tape of the arrest, Cherry objected on the ground that he had not been given an opportunity to view the original tape. Defense counsel explained: "we would need an opportunity to see [what the original portrays] before we pass on it." After a bench conference, the court admitted the tape into evidence over Cherry's objection. When the State then attempted to publish the tape to the jury, Cherry insisted that the court reporter play it in its entirety. The record reflects the tape was played in its entirety, although Cherry now questions the record's accuracy on this point.

Cherry argues the court erred in denying his request to view the original tape before admitting it into evidence. He maintains its admission prejudiced him because it shows Officer Parker making other traffic stops which could have biased the jury in favor of Officer Parker.[2]

Although the tape depicts events defense counsel did not have an opportunity to review prior to trial, we do not find the court abused its discretion in admitting it into evidence. Moreover, even though much of the tape does not involve Cherry's case and is therefore irrelevant, we believe it did not prejudice him. Furthermore, it appears the State only intended to play the portion of the tape containing Cherry's arrest. The tape was admitted into evidence only after Cherry's counsel suggested it be admitted into evidence rather than

---

2. The original tape and the copy containing only Cherry's arrest which the State provided to defense counsel before trial are among the exhibits on file in this case. The original tape shows numerous stops Officer Parker made over several days.

simply marked for identification. Furthermore, it was then played in its entirety only upon his counsel's demand. Cherry will not be heard to complain of an error of his own creation. *State v. Babb,* 299 S.C. 451, 455, 385 S.E.2d 827, 829 (1989) (noting a party cannot be heard to complain of an error his own conduct induced).

## B. Money Seized from Cherry

Officer Parker seized $322 in mostly twenty dollar bills from Cherry during his arrest. Cherry attempted to suppress the money in a motion in limine, arguing it was irrelevant. The State argued the money was relevant to show Cherry intended to sell the crack on his person because crack is commonly sold for $20 per rock. The court decided to refrain from ruling on the admissibility until after it heard the testimony. When Officer Parker began to testify about the money, Cherry objected and the court overruled his objection. Cherry now argues that ruling was error.

We first address the State's argument that this issue is not preserved because Cherry made only a general objection to the officer's testimony. In light of his earlier motion in limine, we believe the nature of Cherry's objection was contextually apparent and this issue is therefore preserved. Rule 103, SCRE (timely objection on a specific ground is necessary if the specific ground is not apparent from the context).

We do, however, agree with the State that the money was properly admitted. Cherry was charged with possession of crack cocaine with the intent to distribute. Evidence is relevant, and therefore admissible, when it tends to make the existence of a fact in controversy more or less probable than it would be without the evidence. Rule 401, SCRE. The money was relevant to the contested question of whether Cherry intended to distribute the crack rocks in his possession. In light of the officer's testimony regarding the price of crack rocks, the $322 in mostly twenties was some indication that Cherry had sold crack earlier in the evening and thus, its admission into evidence tended to make the allegation he intended to distribute the crack in his watch pocket more probable. The money was properly admitted.

## C. Crack Cocaine Seized from Cherry

The defense also made a motion in limine to suppress the crack cocaine Officer Parker found in Cherry's watch pocket, arguing it was obtained pursuant to an unlawful search and seizure. Cherry argued the officer conducted an improper stop of the vehicle and thus any search of its passengers was also improper. After hearing a proffer from the officer, the court ruled the drugs were admissible. Cherry now argues the court erred in admitting the drugs because Officer Parker's testimony, that he immediately knew upon touching the outside of Cherry's watch pocket that it contained narcotics, was not believable because he also testified he thought the box of cigars he felt in another of Cherry's pockets might be a weapon. Because this argument is different from the one Cherry raised to the trial court, it is not preserved for our review. *State v. Byram,* 326 S.C. 107, 113, 485 S.E.2d 360, 363 (1997) (holding a party may not assert one ground at trial and another on appeal).[3]

## V. Directed Verdict

Cherry argues the trial court improperly refused his motion for a directed verdict on the charge of possession with intent to distribute because there was no evidence he intended to distribute the crack cocaine. We disagree.

When considering a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Burdette,* 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); *State v. Morgan,* 282 S.C. 409, 411, 319 S.E.2d 335, 336 (1984). It has been recently held that this remains true even when the State relies exclusively on circumstantial evidence. *State v. Mitchell,* 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000). Some cases have held that if the State presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt could be fairly and logically deduced, the case

---

**3.** In any event, this evidence was admissible under the "plain feel doctrine," which permits the warrantless seizure of items an officer immediately identifies by touch as contraband during a pat-down search. *See State v. Smith,* 329 S.C. 550, 561, 495 S.E.2d 798, 804 (Ct.App.1998) (applying the plain feel doctrine).

must go to the jury. *Burdette,* 335 S.C. at 46, 515 S.E.2d at 531; *State v. Poindexter,* 314 S.C. 490, 493, 431 S.E.2d 254, 255–56 (1993). Other cases indicate that where the evidence is circumstantial, there must be *substantial* circumstantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Martin,* 340 S.C. 597, 602, 533 S.E.2d 572, 574 (2000) (citing *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996)). Still other cases indicate some distinction between direct evidence and circumstantial evidence in considering whether a directed verdict should be granted. *State v. Patterson,* 337 S.C. 215, 232, 522 S.E.2d 845, 853 (Ct.App.1999) ("If there is *any* direct evidence or *any* substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, an appellate court must find the case was properly submitted to the jury." (emphasis added)) (citing *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999)). If the trial court must make a determination that the circumstantial evidence is substantial, that would seem to require a weighing of the evidence which, of course, all cases agree, is forbidden.

Clearly, the trial judge should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. *Martin,* 340 S.C. at 602, 533 S.E.2d at 574 (citing *State v. Irvin,* 270 S.C. 539, 243 S.E.2d 195 (1978)). It is equally clear, however, that on appeal from the denial of a motion for directed verdict, this court must view the evidence in the light most favorable to the State. *Burdette,* 335 S.C. at 46, 515 S.E.2d at 531.

The State submitted testimony that Cherry's arrest occurred in a high crime area known for violence and drug activity. Cherry had a small bag containing approximately eight rocks of crack cocaine on his person. He had no crack pipe or other drug paraphernalia with him indicating the crack was for his personal consumption. He did, however, have $322 cash on his person in mostly twenty dollar bills. Officer Parker testified a single rock of crack cocaine is typically sold for twenty dollars. Viewing this evidence in the light most favorable to the State, as we must, and without passing on the weight of the evidence, the combination of these factors constitutes evidence which would reasonably tend to prove Cherry

intended to distribute the crack cocaine and, thus, justifies the trial court's decision to submit the case to the jury for its determination.[4]

## VI. Circumstantial Evidence Instruction

During its jury charge, the trial court issued the circumstantial evidence instruction recently approved and recommended by our supreme court in *State v. Grippon*, 327 S.C. 79, 489 S.E.2d 462 (1997). After the jury was charged, defense counsel requested the court issue Judge Ervin's charge on the difference between direct and circumstantial evidence. Tom J. Ervin, *Ervin's South Carolina Requests to Charge–Criminal* § 3–4 (1994). The court refused to recharge the jury as requested.

We note that Judge Ervin's model charge on circumstantial evidence is similar to the traditional language our supreme court approved in *State v. Edwards*, 298 S.C. 272, 379 S.E.2d 888 (1989). The traditional charge distinguishes between direct and circumstantial evidence, whereas the new charge adopted in *Grippon* specifically states there is no legal distinction between the two types of evidence. *Compare Edwards*, 298 S.C. at 275, 379 S.E.2d at 889 ("[E]very circumstance relied upon by the State [must] be proven beyond a reasonable doubt; and . . . all of the circumstances so proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis."), *with Grippon*, 327 S.C. at 83–84, 489 S.E.2d at 464 ("The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence."). Although the supreme court noted in *Grippon*, 327 S.C. at 82, 489 S.E.2d at 463, and reiterated in *State v. Needs*, 333 S.C. 134, 156 n. 13, 508 S.E.2d 857, 868 n. 13 (1998), that the traditional *Edwards* charge is still a legally correct and appropriate jury instruction, we cannot fault the trial court for utilizing a charge recently specifically approved by the su-

4. We have not factored in nor considered the presence of the pistol in the vehicle because the trial judge, in analyzing whether to submit the case to the jury, specifically stated that he did not consider it in his deliberations.

preme court. It obviously is a correct statement of the law of circumstantial evidence. "The judge properly instructs the jury if he adequately states the applicable law. A jury charge which is substantially correct and covers the law does not require reversal." *State v. Ezell*, 321 S.C. 421, 425, 468 S.E.2d 679, 681 (Ct.App.1996) (citation omitted). We find no error.

## CONCLUSION

Because all three judges of the panel are in agreement on Issues I through IV, two of the three judges of the panel are in agreement as to Issue V, and two, albeit different, judges of the panel are in agreement on Issue VI, Cherry's conviction for possession of crack cocaine with intent to distribute is

**AFFIRMED.**

HOWARD, J., concurs in part and dissents in part in a separate opinion.

SHULER, J., concurs in part and dissents in part in a separate opinion.

HOWARD, J., concurring in part and dissenting in part:

I concur in Parts I through IV of Judge Stilwell's opinion. Part V of the opinion involves the sufficiency of the evidence to establish an intent to distribute. I do not agree with the majority on this point, and respectfully dissent. As to Part VI, I concur, but write separately to address Judge Shuler's dissenting opinion.

### Part V—Sufficiency of the Evidence

I conclude the circumstances do not present facts from which a jury could reasonably and logically conclude Cherry intended to distribute crack cocaine. Therefore, I would rule the trial judge erred in failing to grant a directed verdict on this charge.

In a case which is based solely upon circumstantial evidence, the evidence is not "substantial" if the jury must speculate to conclude guilt, even though all of the evidence is taken as true. *See State v. Martin*, 340 S.C. 597, 602, 533 S.E.2d 572, 574 (2000); *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126,

127 (2000). If the circumstances, alone and in combination, are as consistent with innocence as with guilt, then no valid conclusion can be drawn from them. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."); *Martin,* 340 S.C. at 602–03, 533 S.E.2d at 574–75 (holding the State failed to meet the "any substantial evidence" standard, and motion for directed verdict should have been granted where State had no proof either defendant held drowning victim's head under water, or that the two acted in concert, and, although evidence provided the likely possibility that the defendant's car was at the scene of the murder, the vehicle could not be identified with sufficient certainty to rule out the alternative possibility that it was merely a similar vehicle).

The majority identifies the following circumstances as the factual basis for denying Cherry's directed verdict on the distribution charge:

1) Cherry's arrest occurred in a high crime area known for violence and drug activity;

2) Cherry had a small bag containing approximately eight rocks of crack cocaine;

3) Cherry had no crack pipe or other drug paraphernalia with him indicating the crack was for his personal consumption;

4) Cherry had $322 cash on his person, mostly in twenty dollar bills;

5) Officer Parker testified a single rock of crack cocaine is typically sold for twenty dollars.

The majority does not discuss why the above circumstances provide inferences which could reasonably support a finding of guilt beyond a reasonable doubt on the distribution charge.

For the following reasons, I conclude these circumstances do not provide a factual basis to submit the charge of possession with intent to distribute to the jury.

1) High Crime Area—There is no evidence that a person who possesses crack cocaine in a high crime area is more likely to distribute the crack cocaine than to purchase it. Indeed, logic defeats the conclusion. If there is a greater incidence of street level crack cocaine distribution in a high crime area, it is only logical to conclude that a concentrated number of drug users are in that area as well. Consequently, this circumstance does not provide a logical basis for concluding Cherry intended to distribute the crack cocaine, as opposed to using it. For the same reason, this circumstance adds nothing to any of the other predicate facts to establish an intent to distribute.

2) Eight rocks of crack cocaine—The second circumstance involves the crack cocaine itself. Cherry had eight rocks of crack cocaine weighing less than one gram, contained in one small bag. The crack cocaine was not packaged in multiple bags, and unlike *State v. Robinson*, 344 S.C. 220, 543 S.E.2d 249 (Ct.App.2001), there was no testimony from police officers to establish that drug users typically would not possess this much crack cocaine, either by weight or number of individual pieces. Furthermore, the significance of possessing multiple rocks is not within the common knowledge of jurors. Absent additional evidence, such as multiple packaging or supporting testimony from police officers trained or experienced in drug enforcement, there is no reasonable inference of intent to distribute derived from this evidence which is sufficient to support a finding of guilt beyond a reasonable doubt. S.C.Code Ann. § 44–53–375(B) (Supp.2000) (a permissible inference of an intent to distribute arises from "possession of *one or more* grams of . . . cocaine" (emphasis added)); *see also State v. Young*, 99–1264, p. 11 (La. Ct.App. 1 Cir. 3/31/00), 764 So.2d 998, 1006 (holding "mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible"); *Fox v. Mississippi*, 756 So.2d 753, 759 (Miss.2000) ("When the quantity is such that an individual could use it alone, then that quantity is not in and of itself sufficient to create an inference of intent [to distribute]."); *State v. Becerra*, 112 N.M. 604, 817

P.2d 1246, 1250 (Ct.App.1991) ("[W]here there was no evidence of the concentration of the drug, and no evidence of how long it would normally take a single drug user to consume a given quantity, the weight of the amount recovered could not in itself enable a fact finder to conclude, beyond a reasonable doubt, that defendant intended to distribute the substance.").

3) No visible means of smoking the crack cocaine—The third circumstance is the lack of a crack cocaine pipe or other drug paraphernalia needed for immediate use, from which the majority implies that Cherry did not intend to consume the crack cocaine. An inference can reasonably be drawn that Cherry did not intend to *immediately* use the drug. Thus, if time was the issue, that is, immediate use versus use at some later time, this fact would be substantial evidence. However, it is insufficient to provide a logical basis for concluding it is more likely Cherry intended to distribute the crack cocaine than to use it at some future time. At the very most, it is incomplete information, because it only proves he had no method for immediate use. Therefore, neither a conclusion of intent to distribute nor a conclusion of personal use is reasonably premised upon this circumstance.

4 & 5) $322 in cash and police officer's testimony—Lastly, there is the $322 in cash seized from Cherry, coupled with the police testimony that crack cocaine is often sold in twenty dollar amounts. The amount of money is certainly not noteworthy. *See Young,* 99–1264, p. 13, 764 So.2d at 1006 ($370.00 in cash "[was] not so large that no other inference was possible. Accordingly, a rational trier of fact could not have concluded beyond a reasonable doubt that the State proved the 'intent to distribute' element of the crime." (citation omitted)). Many people carry cash, and many people cash their entire paychecks, choosing not to maintain a checking account. Certainly the fact of possession of a relatively small amount of currency does not, in and of itself, allow an inference of illegal activity.

This amount of currency is not consistent with the amount related by law enforcement as the value of multiple rocks of crack cocaine. There is no testimony that crack cocaine is sold for $2, $12, $22 or in any other multiple of two dollars, which would help explain the additional $2. Furthermore,

twenty dollar bills are not unusual denominations to carry. They are the predominant bills used at banks and automatic teller machines for cash withdrawals of hundred dollar multiples. To be sure, the money Cherry possessed is consistent with a guilty intent to distribute. But it is no less consistent with possession for personal use. To base a conclusion on it, then, is to rest on pure speculation.

None of these circumstances provides a basis for reasonably inferring an intent to distribute.[5] Furthermore, they are not substantial in combination. As Judge Shuler points out in his concurring and dissenting opinion:

> [T]he use of circumstantial evidence calls on the jury to employ analytical tools in a complex reasoning process not otherwise needed when reviewing direct evidence alone. In so doing, it invites the danger of 'logical gaps' legitimately associated with circumstantial evidence—that the jury may surmise guilt from 'subjective inferential links based on probabilities' and thereby elevate coincidence or suspicion into permissible inference.

(citing *People v. Cleague*, 22 N.Y.2d 363, 292 N.Y.S.2d 861, 239 N.E.2d 617, 619 (1968)).

I conclude the evidence required the jury to employ this impermissible method of arriving at its determination of guilt. Each of the predicate facts is completely consistent with simple possession of crack cocaine, and they remain consistent with simple possession in combination. When added together, it might be said that they more completely tend to prove possession of crack cocaine, but they do not provide a reasonable basis for concluding that the crack cocaine was possessed with the intent to distribute it.

Where the amount of drugs is less than the threshold amount giving rise to the permissible statutory inference of intent to distribute, our courts have required more than mere possession and the general circumstances found here as a basis for concluding guilt. "Possession of *any* amount of

---

5. As the majority points out, the trial judge declined to consider any implications from the presence of the weapon, because police attributed it exclusively to Cherry's sister. In any event, there was no expert testimony to provide an evidentiary basis for inferring an intent to distribute from the presence of the weapon.

controlled substance when coupled with sufficient indica of intent to distribute will support a conviction for possession with intent to distribute." *State v. Goldsmith,* 301 S.C. 463, 466, 392 S.E.2d 787, 788 (1990); *see Matthews v. State,* 300 S.C. 238, 239, 387 S.E.2d 258, 259 (1990); *State v. Adams,* 291 S.C. 132, 134, 352 S.E.2d 483, 485 (1987). However, I find no cases in South Carolina which have upheld a conviction for possession with intent to distribute without some specific indicia of the required intent. *See State v. Brown,* 317 S.C. 55, 57, 451 S.E.2d 888, 890 (1994) ($2,320 in cash); *Fernandez v. State,* 306 S.C. 264, 266, 411 S.E.2d 426, 427 (1991) ($13,000 in cash); *Goldsmith,* 301 S.C. at 465–66, 392 S.E.2d at 788 (search revealing drugs, portable scales for weighing grams, five grams of cocaine in foil-wrapped packages in freezer); *Adams,* 291 S.C. at 133, 352 S.E.2d at 485 (agents seized large inventory of drug paraphernalia, residue, thirty guns, and $134,000 in cash); *State v. Simpson,* 275 S.C. 426, 427–28, 272 S.E.2d 431, 431 (1980) (pilot's possession of aircraft containing drug residue and maps, coupled with police officer's testimony opining that the residue indicated large shipment of marijuana had been transported in airplane); *State v. Durham,* 266 S.C. 263, 267–68, 222 S.E.2d 768, 769–70 (1976) (police seized fifty pounds of marijuana and delicate scales used to weigh small amounts of chemicals and police testified at trial as to significance of the scales); *State v. Muhammed,* 338 S.C. 22, 25, 524 S.E.2d 637, 638–39 (Ct.App.1999) (police found $1085 in cash in a large roll, forty-two bullets, three pagers, a cell phone, and a razor blade with traces of cocaine on it in a car and two pistols and 19.7 grams of crack cocaine in the house); *State v. Peay,* 321 S.C. 405, 411, 468 S.E.2d 669, 672 (Ct.App.1996) ($10,500 in cash); *State v. Mollison,* 319 S.C. 41, 44, 459 S.E.2d 88, 90 (Ct.App.1995) (crack cocaine individually packaged in eighteen separate baggies and marijuana packaged in separate bags in one larger bag, found with defendant at motel).

Our case law is in accord with other jurisdictions, as well. *See, e.g., United States v. Marszalkowski,* 669 F.2d 655, 662 (11th Cir.1982) ("the high purity of the cocaine found ..., along with the recovery from [defendant's] apartment of substance used to cut cocaine, a large amount of cash ($10,500.00) and a weapon ... constitute[d] surrounding circumstances

from which [defendant's] intent to distribute [was] readily inferrable"); *Buffington v. State,* 245 Ga.App. 637, 538 S.E.2d 528, 529 (2000) ($1400.00 in cash, written ledger containing names and initials, with numerical amounts in pounds and ounces, coupled with expert testimony deciphering the ledger, provided sufficient evidence of intent to distribute the large amount of marijuana possessed by defendant to support conviction for possession with intent to distribute marijuana); *State v. Konfrst,* 251 Neb. 214, 556 N.W.2d 250, 263 (1996) (police expert testimony that individually wrapped baggies of drugs found in defendant's possession contained amounts normally sold on the street, that amount of drugs recovered was more than is commonly kept for personal use, that cash found is usual mode of payment, that triple scale found in defendant's possession is commonly used to weigh the drugs, and that the empty baggies found in defendant's possession were the same type as those used to hold the recovered drugs was evidence sufficient to support conviction for possession with intent to distribute); *State v. Zitterkopf,* 236 Neb. 743, 463 N.W.2d 616, 621 (1990) (evidence including large quantity of marijuana, the type of packaging, sophisticated scales found at residence, along with other equipment and supplies, coupled with testimony as to the significance of the items by police officers trained and experienced in drug enforcement, provided sufficient evidence of an intent to distribute to support conviction).

In contrast to our prior cases on this subject, there is no evidence in this case indicating actual distribution activity, pre-cut purity of substance, individual packaging, scales, possession of an amount greater than that normally held by a user, paraphernalia used for distributing, ledgers, or any other indication Cherry intended to distribute the crack cocaine he possessed.

### Part VI—Circumstantial Evidence Charge

As to Part VI of Judge Stilwell's opinion, dealing with the sufficiency of the circumstantial evidence charge, I share the concerns Chief Justice Toal expressed in her concurring opinion in *State v. Grippon,* 327 S.C. 79, 489 S.E.2d 462 (1997), as reflected in Judge Shuler's dissent. However, I believe we are bound by the majority opinion of our supreme court in

*Grippon.* *See* S.C. Const. art. V, § 9; *Daniels v. City of Goose Creek,* 314 S.C. 494, 501, 431 S.E.2d 256, 260 (Ct.App. 1993).

In *Grippon,* our supreme court specifically approved and recommended a circumstantial evidence charge which omits the phrase "to the exclusion of every other reasonable hypothesis," found in *State v. Littlejohn,* 228 S.C. 324, 328, 89 S.E.2d 924, 926 (1955), and *State v. Edwards,* 298 S.C. 272, 275, 379 S.E.2d 888, 889 (1989). *See Grippon,* 327 S.C. at 83–84, 489 S.E.2d at 464 (recommending in "a criminal case relying in whole or in part on circumstantial evidence" a charge found in 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 12.04 (4th ed.1992)). For that reason, we are required to affirm on this point.

Furthermore, I do not believe the charge on circumstantial evidence, which is in the nature of a burden of proof charge, changes with the facts of the case. For this reason, I do not believe the cases cited by Judge Shuler in support of his position are applicable in this context.

The first three cases, *State v. Day,* 341 S.C. 410, 535 S.E.2d 431 (2000), *State v. Starnes,* 340 S.C. 312, 531 S.E.2d 907 (2000), and *Battle v. State,* 305 S.C. 460, 409 S.E.2d 400 (1991), involve self defense charges. As our case law has recognized, there are different legal principles which may apply within the umbrella of this defense, depending upon the facts presented. *State v. Fuller,* 297 S.C. 440, 443, 377 S.E.2d 328, 330 (1989). For example, "defense of others" may be factually raised in one case, and have no applicability in a case involving an altercation solely between the alleged victim and the accused. Although the trial judge may be required to charge "self defense" in each case, only in the first example would the judge be required to charge the law regarding the defense of others.

But unlike the legal principles underlying self defense, the burden of proof is a structural part of the trial process, *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *State v. Jefferies,* 316 S.C. 13, 21, 446 S.E.2d 427, 432 (1994), and the minimum Due Process requirements remain the same in each criminal case. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068.

The last two cases cited, *State v. Kimbrell*, 294 S.C. 51, 362 S.E.2d 630 (1987) and *State v. Brownlee*, 318 S.C. 34, 455 S.E.2d 704 (1995), are also inapplicable, because they deal with a complete failure to charge "mere presence" in drug cases where the facts required the charge.

## CONCLUSION

In conclusion, I agree with Judge Stilwell's determination that the jury charge fully complied with the requirements of South Carolina law, as set forth in *Grippon*. However, there is an absence of any direct or substantial circumstantial evidence reasonably tending to prove an intent to distribute, or from which the intent to distribute crack cocaine can fairly and logically be deduced. For this reason, I would reverse the conviction for distribution of crack cocaine.

SHULER, J., concurring in part and dissenting in part:

While I concur in Parts I through V of Judge Stilwell's thorough opinion, I disagree with the conclusion reached in Part VI and therefore respectfully dissent.

The trial court instructed the jury pursuant to *State v. Grippon*, 327 S.C. 79, 84, 489 S.E.2d 462, 464 (1997) ("The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence...."). Upon realizing the court failed to give the conventional charge on circumstantial evidence, Cherry's counsel, noting that *Grippon* "does not preclude a more thorough charge," requested further instructions. As Judge Stilwell correctly observes, the charge requested is comparable to the traditional language enunciated by our supreme court in *State v. Littlejohn*, 228 S.C. 324, 89 S.E.2d 924 (1955) and later quoted with approval in *State v. Edwards*, 298 S.C. 272, 275, 379 S.E.2d 888, 889 (1989) ("[E]very circumstance relied upon by the State [must] be proven beyond a reasonable doubt ... and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis."). Because I agree that a fuller *Edwards*-type instruction was both appropriate and warranted under the circumstances,

I would find the court's failure to so instruct the jury was error.[6]

There is no question the charging language set forth in both *Grippon* and *Edwards* is valid. *See State v. Needs,* 333 S.C. 134, 159 n. 13, 508 S.E.2d 857, 870 n. 13 (1998) (reaffirming the "well established" *Edwards* charge and stating that the court recently approved a charge in *Grippon* "that makes no distinction between direct and circumstantial evidence"). However, while I concur in the view that the law does not discriminate between the relative weight or probative value of direct versus circumstantial evidence, I must disagree with Judge Stilwell's assertion that the traditional *Edwards* instruction "distinguishes" between the two. *Edwards,* in fact, makes no mention of direct evidence; it merely outlines the *test* which the jury should use in *evaluating* circumstantial evidence. *See Littlejohn,* 228 S.C. at 328, 89 S.E.2d at 926 (describing the charge as the "test by which circumstantial evidence is to be measured by the jury in its deliberations").

In a criminal case, the test set forth in *Edwards* may be critical to a just resolution because of the *nature* of circumstantial evidence. *See Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 338 n. 6, 534 S.E.2d 672, 681 n. 6 (2000) (wherein the court, while concluding circumstantial and direct evidence are equally valid and convincing, recognized that *Edwards* "indicates circumstantial evidence requires greater scrutiny than direct evidence in a criminal proceeding"). Unlike direct evidence, which the jury may accept or reject on its face, a proper assessment of circumstantial evidence requires the jury to decide not only whether the facts and circumstances presented are true, but also whether the defendant's guilt logically can be inferred. Thus, the use of circumstantial evidence calls on the jury to employ analytical tools in a complex reasoning process not otherwise needed when reviewing direct evidence alone. In so doing, it also invites the danger of "logical gaps" legitimately associated with circumstantial evidence—that the jury may surmise guilt from "sub-

---

6. Judge Howard correctly asserts that a charge on the State's burden of proof "is a structural part of the trial process" which, by constitutional mandate, must remain the same in each criminal case. However, I fail to see how a charge on circumstantial evidence is "in the nature of a burden of proof charge." In my view, the two are unrelated.

jective inferential links based on probabilities" and thereby elevate coincidence or suspicion into permissible inference. *People v. Cleague,* 22 N.Y.2d 363, 292 N.Y.S.2d 861, 239 N.E.2d 617, 619 (1968).

The validity of circumstantial evidence, therefore, rests on "whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts." *People v. Wachowicz,* 22 N.Y.2d 369, 292 N.Y.S.2d 867, 239 N.E.2d 620, 622 (1968). The problem with the charge recommended in *Grippon,* however, is that it fails to alert the jury to the unique nature of circumstantial evidence.[7] The *Edwards* charge, on the other hand, provides a framework for focusing the jury's deliberative process in circumstantial evidence cases.

Without question, the law to be charged in a particular case is determined by the evidence presented at trial. *State v. Long,* 325 S.C. 59, 480 S.E.2d 62 (1997); *State v. Gourdine,* 322 S.C. 396, 472 S.E.2d 241 (1996). Accordingly, it is well settled that a trial court commits reversible error when it fails to give a requested charge on an issue raised by the evidence. *See State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999); *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). As our supreme court has stated, "[a] request to charge a correct statement of the law on an issue raised by the indictment and the evidence presented at trial should not be refused." *State v. Austin,* 299 S.C. 456, 385 S.E.2d 830, 831 (1989); *see also State v. Addison,* 343 S.C. 290, 540 S.E.2d 449 (2000); *State v.*

---

7. Interestingly, the *Grippon* charge stems from the Supreme Court's decision in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). While it is true that *Holland,* a tax evasion case involving the "net worth" method of circumstantial proof, proposed as the "better rule" the charging language later articulated in *Grippon,* it was not without qualification. *Id.* at 139, 75 S.Ct. 127. To the contrary, the *Holland* Court referenced the "great danger" associated with equivocal circumstantial evidence——that once the prosecution established the necessary circumstances a jury might assume the inferential crime automatically followed, despite reasonable explanations offered by the defense. *Id.* at 127–28, 75 S.Ct. 127. Accordingly, the Court warned that jury charges in such cases "should be especially clear, including, in addition to the formal instructions, a summary of the nature of the [circumstantial evidence] method ... *and the inferences available both for and against the accused." Id.* at 129, 75 S.Ct. 127.

*Kimbrell,* 294 S.C. 51, 362 S.E.2d 630 (1987). Although the refusal to give a specific charge may not be error *"when the given instructions use the proper test for determining the issues before the jury,"* State v. Hughey, 339 S.C. 439, 452, 529 S.E.2d 721, 728 (2000), such is not the case when the charge as given fails to cover the substance of the request. *See State v. Day,* 341 S.C. 410, 535 S.E.2d 431 (2000) (failure to tailor jury instructions to adequately reflect facts and theories presented by the defendant constituted reversible error); *State v. Starnes,* 340 S.C. 312, 531 S.E.2d 907 (2000) (court must fashion an appropriate charge when defendant requests more than the standard self-defense charge and the evidence supports the request); *Battle v. State,* 305 S.C. 460, 409 S.E.2d 400 (1991) (counsel was ineffective in failing to request additional jury instructions on self-defense when warranted by the evidence, despite fact that judge had instructed jury in accordance with prior court-approved self-defense charge); *State v. Fuller,* 297 S.C. 440, 377 S.E.2d 328 (1989) (court erred in giving a prior-approved charge exclusively without considering the facts and circumstances of the particular case when defense counsel repeatedly requested additional charges based in common law); *State v. Kimbrell,* 294 S.C. 51, 362 S.E.2d 630 (1987) (reversing conviction for cocaine trafficking where the charge requested was a correct statement of the law but charge given did not adequately cover the substance of the request); *State v. Brownlee,* 318 S.C. 34, 38, 455 S.E.2d 704, 706 (Ct.App.1995) (reversing conviction for possession with intent to distribute because, "although the charge as given correctly stated the elements of the offense, it did not adequately cover the substance of [the defendant's] request").

Here, the charge requested by Cherry is a correct statement of the law on circumstantial evidence. *See Needs,* 333 S.C. at 159 n. 13, 508 S.E.2d at 870 n. 13; *Edwards,* 298 S.C. at 275, 379 S.E.2d at 889. Viewing the evidence in the light most favorable to Cherry,[8] I believe the jury could have found the sum of the circumstantial facts asserted by the State to be as consistent with Cherry's innocence *of intent to distribute* crack cocaine as with his guilt. Hence, I would find the unique inferential nature of the circumstances presented in

---

**8.** *See State v. Byrd,* 323 S.C. 319, 474 S.E.2d 430 (1996).

this case justified additional instructions to guide the jury in making appropriate logical inferences and thus preclude a finding of guilt based on mere probability. *See Grippon,* 327 S.C. at 87–88, 489 S.E.2d at 466–67 (Toal, J., concurring in result only) (In "clarif[ying] the jury's responsibility to evaluate circumstantial evidence carefully," the *Edwards* charge forecloses the possibility that the jury " 'may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree.' ") (quoting *People v. Ford,* 66 N.Y.2d 428, 497 N.Y.S.2d 637, 488 N.E.2d 458, 465 (1985)).

It must be noted that nothing in *Grippon* or *Needs* precludes a trial court from giving the more detailed *Edwards* charge, including the language that all of the circumstances proffered by the State must "point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis." *Edwards,* 298 S.C. at 275, 379 S.E.2d at 889. Indeed, in *Grippon* the court reiterated it has "never rejected the 'reasonable hypothesis' phrase or found [that it] shifted the burden of proof" from the State. *Grippon,* 327 S.C. at 82, 489 S.E.2d at 462; *see also State v. Harry,* 321 S.C. 273, 279, 468 S.E.2d 76, 80 (Ct.App.1996) (approving use of "reasonable explanation" phrase). Furthermore, continued approval of the *Edwards* charge is rendered superfluous if the charge is not given when necessitated by the factual posture of the case.

As our supreme court has said, "[t]he purpose of a charge is to enlighten the jury. This purpose is accomplished by a statement of the law which fits the concrete case. . . ." *State v. Fair,* 209 S.C. 439, 445, 40 S.E.2d 634, 637 (1946) (quoting *State v. Durant,* 87 S.C. 532, 534, 70 S.E. 306, 307 (1911)). In my view, while the *Grippon* charge "obviously is a correct statement of the law," it does not cover the substance of Cherry's requested instruction. It was therefore error to refuse the request.

Moreover, the court's failure to give the additional instruction cannot be considered harmless, because there exists a reasonable likelihood the jury was unaware it should acquit if it found the combined circumstances relied upon by the State equally susceptible of an inference inconsistent with guilt of the crime charged. *See, e.g., State v. Jefferies,* 316 S.C. 13, 22, 446 S.E.2d 427, 432 (1994) ("In making a harmless error

analysis, our inquiry is not what would the verdict have been had the jury been given the correct charge, but rather did the erroneous charge contribute to the verdict rendered."). In my opinion, Cherry was prejudiced by the court's refusal to give the requested charge, particularly in light of a clearly impermissible closing argument wherein the solicitor stated there was evidence Cherry "had already distributed some crack," and that there was "no evidence that he was going to use [the crack] personally for himself." Accordingly, I would reverse the conviction and remand for a new trial.